[Civ. No. 12210. Third Dist. Mar. 9, 1971.]

TOM COATS, Plaintiff and Respondent, v.
CONSTRUCTION AND GENERAL LABORERS LOCAL NO. 185,
Defendant and Appellant.

**910**

**COUNSEL**

Levy & Van Bourg and Gerald Tiernan for Defendant and Appellant.

Bradford & Stanley and Jerome S. Stanley for Plaintiff and Respondent.

## OPINION

BRAY, J.*—Defendant Union appeals from the judgment after jury verdicts in favor of plaintiff for $5,000 general damages and $50,000 punitive damages, and from the order denying "Motion for Judgment notwithstanding the Verdict."

### QUESTIONS PRESENTED

1. Sufficiency of the evidence.

2. Excessive damages.

3. Punitive damages may be awarded against an employer of a person causing an injury.

### RECORD

Plaintiff, a member of defendant Union since 1954, brought this action against the Union and two of its employees, Rose and Andreoff, for damages for injuries resulting from assault and battery. After a trial, the jury awarded plaintiff the sums above mentioned. The sole appeal is by defendant Union.

### EVIDENCE

The Union is composed of general laborers, among whom it was testified that fist fights were not uncommon. Plaintiff was an active member, missing perhaps only two meetings between 1954 and 1966. Plaintiff would actively participate in the meetings, take the floor and comment regarding the Union management. Rose and Andreoff were assistant business representatives of the Union. On the night of February 9, 1966, plaintiff was at the Union meeting attacking the policy of a flat $125 per month car allowance, plus oil, gas, etc., to assistant business agents, contending the cars could be rented for $65 per month. There was testimony that Rose and Andreoff directly or without provocation called plaintiff a liar. During the meeting, plaintiff went to the restroom, where he was threatened by Andreoff. Plaintiff left the restroom and while he was in the hallway of the Union, Rose joined Andreoff. Rose threatened to whip plaintiff and throw him out of the Union. Two men got between Rose and plaintiff, preventing Rose from carrying out his threat. Plaintiff testified that he was in actual physical fear at that time as he knew if he moved or did anything, he would be beaten up.

After the meeting, plaintiff went across the street to the Patio Bar. What happened there is in dispute. Plaintiff testified that without any provocation,

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Rose, referring to the occurrence at the business meeting, attacked him and struck him four blows in the face, knocking him to the floor each time. Witnesses for defendant testified that plaintiff attacked Rose. One of plaintiff's eyes was closed and he was quite bloody. His wife testified that two days later, he was still all beaten up. He did not see a doctor but his wife gave him medical treatment.

The next day, plaintiff advised the Union's president, business manager and secretary of the occurrences of the evening before. An investigation was made by the Union and one of the officers concluded that it was a personal matter between the participants. However, the president came to a different conclusion as he wanted to fire Rose and Andreoff. Two days after the meeting, Rose called plaintiff and told him to get out of town.

Immediately thereafter, plaintiff started experiencing difficulties with the Union in his treatment at meetings and at work. In all his prior 12 years' membership, he had never failed to work enough hours to qualify for health and welfare benefits. After this trouble, for the first time he did not receive sufficient hours to qualify and the entire type and tenor of his work changed radically.

To vindicate himself, he filed this action on March 24, 1966. He attempted to secure witnesses. One Morrison agreed to testify for him. On one occasion, Morrison and plaintiff reported to the Union as required and three men followed plaintiff home from the hall. Later the same day, Morrison was followed from the Union hall and induced to pull off the road. Three men jumped out of their car. They dragged Morrison from his car and beat him into unconsciousness, telling him to leave the Union alone. The marks on his face indicated that they were made with chains. One Roberts informed plaintiff by phone "We just worked over your witness. How do you like those potatoes?"

There was testimony to the effect that Roberts worked in some capacity for the Union, was paid by it and when necessary did this type of work. Prior to this time, Morrison had not had any problems with the Union but subsequently he was tried and expelled. At the Union hearing, he was advised by a board member that if he had not had plaintiff with him, he would have escaped with an apology. The Union continued to employ Rose and Andreoff subsequent to the fight.

1. Sufficiency of the evidence.

Defendant contends that there is no substantial evidence that defendant Union is responsible for plaintiff's injuries.

It is uncontradicted that plaintiff was assaulted by Rose and Andreoff as

a result of plaintiff's opposition at the Union meeting to their car allowances; that plaintiff was assaulted by them at the Union hall during a recess in the meeting and later by Rose; and that the reason for the assaults was the fact that plaintiff had exercised his right as a member of the Union to oppose the payments being made by the Union to his two assailants.

Rose and Andreoff were in the employ of the Union and were on duty at the meeting as they were required to attend all meetings. There is no evidence that the officers of the Union authorized the beating of plaintiff. ■ However, an employer may not avoid liability for an assault by his employee on the ground that the employment did not contemplate an entry into relations with third persons in the course of which he might commit an assault, where his assignment would obviously bring him in contact with others and where the " 'injury resulted from a dispute arising out of the employment.' " (*Fields* v. *Sanders* (1947) 29 Cal.2d 834, 842 [180 P.2d 684, 172 A.L.R. 525].)

■ Whether an employee is acting within the scope of his employment or authority is an issue that involves the determination of several factors, among others, "whether his conduct was authorized by his employer, either expressly or impliedly . . . whether his conduct occurred during the performance of services for the benefit of the employer, either directly or indirectly . . . whether his conduct, even though not expressly or impliedly authorized, was an incidental event connected with his assigned work . . . and many other things besides the time and place of performance of his duties as an employee." (*McIvor* v. *Savage* (1963) 220 Cal.App.2d 128, 136 [33 Cal.Rptr. 740].) Whether the fact that the battery occurred away from the Union building would permit the Union to contend that it was done without its authority is immaterial. (It must be remembered, however, that plaintiff was assaulted by both Rose and Andreoff on the Union premises, only being prevented from striking him by the intervention of others.) ■ The evidence discloses that the Union by its conduct ratified the actions while having full knowledge thereof. Although informed of the actions of Rose and Andreoff, the Union did not repudiate them, in spite of the desire of the president to do so by discharging the two men. A reasonable inference is that the officers of the Union ratified the actions of Rose and Andreoff.[1] Particularly is this so in view of the evidence which shows that prior to employing the two men, the then president, Don Hill, was informed of Rose's violent propensities through newspaper reports and observations and through a specific anonymous communication. Hill testified that during his term as president, he had discussed the violent actions

---

[1]A union is an institution comparable to a corporation and acts normally through elected officers. (*Daniels* v. *Sanitarium Assn., Inc.* (1963) 59 Cal.2d 602, 604-605 [30 Cal.Rptr. 828, 381 P.2d 652].)

of the two men with Peterson, the former finance secretary, and Coron, a former member of the board, and that they were concerned about their actions. Hill knew that during a strike at the Oroville Dam, Rose had severely beaten a Union member and that on an occasion, Andreoff had knocked a member down in the Union hall, causing great fear among the members. The difficulties which plaintiff and Morrison had with the Union after the assault also bear on the question of ratification.

■ "An employer is responsible for the wilful and malicious acts of an employee which he has ratified. Failure to discharge an employee or agent guilty of oppressive acts towards patrons of the employer is in itself evidence to show ratification. (*McChristian* v. *Popkin,* 75 Cal.App.2d 249 [171 P.2d 85].) ■ If the employer after knowledge or opportunity to learn of the agent's misconduct retains the wrongdoer in service, the employer may make himself liable in punitive damages." (*Shoopman* v. *Pacific Greyhound Lines* (1959) 169 Cal.App.2d 848, 856 [338 P.2d 3].)

*Caldwell* v. *Farley* (1955) 134 Cal.App.2d 84, 90 [285 P.2d 294], and *Sullivan* v. *Matt* (1955) 130 Cal.App.2d 134 [278 P.2d 499], relied upon by defendant, can be distinguished. There, the court held that the negative action of the employer in not firing the employee (the sole evidence of ratification) who committed the criminal act, yet whose special skills and experience were necessary to the employer could not be said to be a ratification of his act. In the instant case, neither Rose nor Andreoff had special skills that would cause the Union a loss if they were discharged. Moreover, positive acts by defendant's officials in harassing plaintiff were evidenced.

The president of the Union was also one of the dispatchers who punished plaintiff by not giving him employment as before. He told plaintiff that they would get him if it broke the Union. On plaintiff's first job after the assault, a representative of the Union came on the job, told the boss that plaintiff was a trouble maker and as a result, plaintiff lost that job. At a later meeting, Rose referred to plaintiff as "this no good phony that I beat up across the street is nothing but a loud mouth phony." Plaintiff was ruled out of order when he tried to reply to Rose.

Plaintiff filed charges in the Union against Rose but nothing came of them.

Defendant seems to contend that actions of the executive board cannot be said to be actions of the Union; therefore the Union cannot be held liable. ■ As hereinbefore stated, a trade union is in many respects like a corporation. It acts through and is bound by the acts of its officers.

Defendant's constitution provides that its executive board controls the business of the Union.

Suit has been allowed against local unions when the officers of the union have been perpetrators of acts similar to those in the case at bench. (*Inglis* v. *Operating Engineers Local Union No. 12* (1962) 58 Cal.2d 269 [23 Cal. Rptr. 403, 373 P.2d 467]; *Caldwell* v. *Farley, supra,* 134 Cal.App.2d 84; see also *Bland* v. *Reed* (1968) 261 Cal.App.2d 445, 448 [67 Cal.Rptr. 859].)

2a. General Damages.

Plaintiff was awarded $5,000 general damages. Although plaintiff did not seek medical help, it is undisputed that he received four crashing blows to the face which knocked him to the floor. One eye was closed. He was bloody all over. He was still, two days later, "all beaten up." He apparently suffered considerable pain. Likewise, he suffered great humiliation in being beaten in the presence of his fellow Union members. As said in *Sullivan* v. *Matt, supra,* 130 Cal.App.2d at page 143, "No doubt he suffered indignity, mortification, and disgrace. ▮ The remedy for an excessive verdict is generally with the trial judge. ▮ A reviewing court may not interfere with an award of damages unless the amount is so outrageously excessive as to immediately suggest passion or prejudice." (See *Seffert* v. *Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 507 [15 Cal.Rptr. 161, 364 P.2d 377].)

The trial court denied defendant's motion for a new trial, one of the grounds for which was the claim of excessive damages. Under the rule above stated, we cannot say that the general damages award was excessive.

2b. Punitive Damages.

Section 3294 of the Civil Code provides "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

▮ While maintaining a wrongdoer employee in the service of the employer standing alone, does not make the employer liable, it indicates the employer's approval of the employee's course and with other acts will make the employer liable in punitive damages. (*Edmunds* v. *Atchison etc. Ry. Co.* (1917) 174 Cal. 246, 249 [162 P. 1038].)

The knowledge that the Union had of the various tendencies of Rose and Andreoff and the fact that they had on a prior occasion beaten Okie Blum, a member of the Union, the fact that with that knowledge, the Union con-

tinued to employ them, and the oppression of the Union on plaintiff and Morrison with reference to not dispatching them for jobs brings this case within the rule, namely, that "Where punitive damages are permissible, their allowance and amount are within the discretion of the trier of fact. In assessing such damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff which the defendant caused or intended to cause, and the wealth of the defendant." (*Di Giorgio Fruit Corp.* v. *AFL-CIO* (1963) 215 Cal.App.2d 560, 580 [30 Cal.Rptr. 350].) ▪ Punitive damages, like compensatory damages, are in the discretion of the jury. (*Toole* v. *Richardson-Merrell Inc.* (1967) 251 Cal.App.2d 689, 719 [60 Cal.Rptr. 398, 29 A.L.R.3d 988]; *Ferraro* v. *Pacific Fin. Corp.* (1970) 8 Cal.App.3d 339, 351-353 [87 Cal.Rptr. 226].)

▪ As said in section 908 of the Restatement of the Law of Torts, " 'Punitive damages' are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct." It connot be gainsaid that a union, endorsing the actions of an officer in beating up a member because he opposes the action of its officers, was engaging in outrageous conduct.

Defendant contends that the argument of plaintiff's counsel to the jury was inflammatory, resulting in excessive damages. No objection was raised in the trial court as to most of it, until the motion for new trial. A proper objection and an admonition to the jury would have removed the effect of counsel's statements. We cannot say, although some strong statements were made concerning the conduct of some unions, that they were of such a nature that an admonition by the court, if asked for, would not have been adequate.

In the few instances where objection was made during the trial, the objections were sustained and admonitions given, or the evidence was admitted for limited purposes with no further objections being made ▪ As said in *Sabella* v. *Southern Pac. Co.* (1969) 70 Cal.2d 311, 318 [74 Cal.Rptr. 534, 449 P.2d 750], " ' "Where the action of the court is not thus invoked [by objection], the alleged misconduct will not be considered on appeal, if an admonition to the jury would have removed the effect." ' "

The judgment and the order are affirmed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied April 8, 1971, and appellant's petition for a hearing by the Supreme Court was denied May 6, 1971.