[No. E002982. Fourth Dist., Div. Two. Mar. 3, 1987.]

JOHN HART, Plaintiff and Appellant, v.
NATIONAL MORTGAGE & LAND COMPANY, Defendant and
Respondent.

**COUNSEL**

Patricia D. Barrett for Plaintiff and Appellant.

Thompson & Colegate, Sharon J. Waters, Nora I. Tu and Geoffrey H. Hopper for Defendant and Respondent.

**OPINION**

**HEWS, J.**—The trial court granted summary judgment and/or summary adjudication of issues as to John Hart's four causes of action against his employer, National Mortgage & Land Company (National). Hart appeals, contending the trial court erred in concluding his first cause of action, for sexual harassment, was not cognizable under Government Code section 12940. We disagree, and therefore affirm that portion of the trial court's ruling. Hart also contends the court below erroneously concluded National is not potentially liable to him for negligence or punitive damages. We agree with Hart and reverse that portion of the judgment. Although not addressed by the trial court, we decide here an issue contested by both parties—whether workers' compensation provides the exclusive remedy for Hart's causes of action for assault and battery and intentional infliction of emotional distress.

FACTS

The facts recited here are deciphered from partial deposition transcripts attached to both parties' papers re National's motion for summary judgment and summary adjudication of issues.

In August 1981, 59-year-old Hart, Jean Campbell and Debbie Adams were all supervisors of equal rank in National's customer service department. Hart and Campbell shared an office. Hart claimed during the ensuing year Campbell made unwelcomed and unsavory remarks and physical gestures towards him, which he complained about to Campbell and Adams.

In September 1982, Campbell and Adams were promoted to comanagers of the department (with equal authority), making them Hart's superiors. Campbell moved out of Hart's office. Thereafter, Hart said Campbell became bolder in his physical and verbal interaction with him. During the ensuing nine months, Campbell would grab Hart's genitals, grab Hart around the waist and try to mount him and make sexually suggestive gestures, accompanied by crude remarks. He claims Campbell would also scratch his own genitals. At times, some of these acts were done in the presence of other employees, some of whom were female. On each occasion, Hart would yell and/or "elbow" Campbell and demand he desist, but he did not. Hart even threatened Campbell with a sexual harassment suit.

Hart felt Campbell was a pervert and was singling him out for this treatment. He did not believe, however, that Campbell was doing this because he was interested in having sex with Hart.

Hart said in the fall of 1982, he complained to Debbie Adams about Campbell's behavior.[1] Adams replied the problem would have to be solved within the department and she would take care of it. Hart spoke to Adams sometime thereafter and asked her if she had conveyed his complaint to Mary Drury, assistant to National's president and director of Hart's department. Adams said, "No," that Drury was "busy." Hart told Adams to "[g]et her unbusy."

In February 1983, Adams and Campbell showed Hart a plastic ice cube tray replica of a man's penis. In late April, after another "mounting" incident with Campbell, Hart again complained to Adams and demanded a meeting with Mary Drury. However, Drury was busy and the meeting never took place. A week later, Hart told Adams "[Campbell] has really done it to me . . . with his . . . horsing around . . . ." He resigned, at his doctor's urging, because of a nervous condition he claims was caused by Campbell's behavior. Later that day, during a phone conversation with Mary Drury, he told her about Campbell's conduct.

Campbell denied doing any of the things Hart alleges except for occasion-

---

[1]Hart said Campbell had told him if he wanted to talk to anyone superior to him, he would have to go through Debbie Adams.

ally scratching himself in an unoffensive way. He denied Hart or anyone else had ever complained to him about his behavior. He and Debbie Adams admitted showing Hart the ice cube tray, but they claimed Hart had asked to see it and laughed when they showed it to him. Both Mary Drury and Debbie Adams denied seeing or being told about any of the acts Hart alleges Campbell did.

Hart's suit names National, its president Gary Berger, Mary Drury, Debbie Adams and Campbell as defendants. Hart alleges the latter four were "agents, servants and employees of . . . National . . . , and in doing the things . . . [alleged] were acting in the course and scope of their authority as such . . . ."

Eventually, by stipulation, Gary Berger, Mary Drury, and Debbie Adams were dismissed from the suit, leaving only National and Campbell as defendants.

Hart alleges Campbell (and on one occasion, Adams) sexually harassed him during the relevant period by doing the above described things, all of which he reported to Adams and eventually to Drury on the day he resigned.

In his first cause of action, he alleges Campbell's acts caused him humiliation and stress and created an offensive and hostile working environment, all of which eventually forced him to resign. He claims this constitutes an unfair employment practice under Government Code section 12940, subdivision (b).

In his second cause of action, Hart alleges National was negligent in retaining Campbell after Hart reported the harassment to Adams.

Hart's third cause of action, for assault and battery, states Campbell "came at [Hart] in a threatening manner grabb[ed] him around the waist, . . . jumped on [his] back . . . [and] pinch[ed] plaintiff on the buttocks" which caused Hart to suffer "medical and emotional distress." He incorporates by reference his allegation he reported these acts to Adams, and, eventually to Drury.

In his fourth cause of action, Hart alleges Campbell's acts were outrageous, intentional and malicious and were "done for the purpose of causing [him] humiliation, mental anguish and emotional and physical distress." He further alleges, "Adams and Drury condoning this conduct was done with knowledge that [he] had objected and . . . would suffer further emotional and physical distress and was done with a wanton and reckless disregard of the consequences to [him]."

As to both the third and fourth causes of action, Hart alleges, in addition to general damages and work disability that he is entitled to punitive damages, because "[t]he ... acts of ... Campbell were willful, wanton, malicious and oppressive."

In granting National's motion for summary judgment, etc., the trial court focused on two issues raised by the parties and ignored others. The court held Campbell's conduct was "below and beyond the employment duties and work responsibilities," which consequently absolved National of any liability. Moreover, the court said Hart failed to allege that National either had "advanced [*sic*] knowledge and constant disregard" of Campbell's acts or "authorized or ratified" them, as "required by C[ivil] C[ode] § 3294(b) for an award of punitive damages against an employer." As to the first cause of action under Government Code section 12940, the court found that section did not apply.

# I

## GOVERNMENT CODE SECTION 12940

■ Government Code section 12940, as here pertinent, prohibits an employer from discriminating against his employee in the "terms, conditions or privileges of employment ... *because of sex* [ ] [¶] [or] haras[sing him] ... *because of sex*." Hart does not here allege, nor do the depositions show, that Campbell harassed Hart because of Hart's sex. Absent this, section 12940 does not apply.

# II

## NATIONAL'S LIABILITY FOR NEGLIGENCE

■ National argues the facts do not show it was negligent in rehiring Campbell in 1980.[2] Be that as it may, Hart alleges in his second cause of action that National "negligent[ly] *retained* Campbell ... after it had been reported to Adams that ... Campbell ... was [harassing him]." If knowledge of the harassment and failure to act by Adams, or anyone above her, can be imputed to National, Hart has stated a cause of action in negligence. The matter involves questions of fact which cannot be decided here.

■ The same holds true for National's vicarious liability on the third and fourth causes of action. Despite the trial court's ruling, whether Campbell, Adams or Drury acted within the scope of their employment, thus making

---

[2]Campbell had previously worked for National, but had been laid off.

National liable, is a question of fact (*Coats* v. *Construction & Gen. Laborers Local No. 185* (1971) 15 Cal.App.3d 908, 913 [93 Cal.Rptr. 639]; 29 Cal.Jur.3d, Employer and Employee, § 92, pp. 706-707, § 116, p. 771) which must be tried.

### III

#### WORKERS' COMPENSATION AS THE EXCLUSIVE REMEDY

National claims workers' compensation is the exclusive remedy available to Hart for the assault and battery and intentional infliction of emotional distress causes of action. ■ Labor Code sections 3600 and 3601 make workers' compensation the exclusive remedy except in a few narrowly drawn circumstances.[3] Despite this seemingly clear prohibition, case law construing

---

[3]Labor Code section 3600 provided: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as provided in Section 3706, shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

"(a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

"(b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment.

"(c) Where the injury is proximately caused by the employment, either with or without negligence.

"(d) Where the injury is not caused by the intoxication of the injured employee.

"(e) Where the injury is not intentionally self-inflicted.

"(f) Where the employee has not willfully and deliberately caused his own death.

"(g) Where the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor."

Labor Code section 3601 provided: "(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, except as provided in Section 3706, the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment, except that an employee, or his dependents in the event of his death, shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against such other employee, as if this division, did not apply, in each of the following cases:

"(1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of such other employee.

"(2) When the injury or death is proximately caused by the intoxication of such other employee.

"(b) An act which will not sustain an independent action for damages against such other employee under paragraph (1), or (2) of subdivision (a) of this section may nevertheless be the basis of a finding of serious and willful misconduct under Section 4553 or 4553.1, if (1) such other employee is established to be one through whom the employer may be charged under Section 4553; (2) such act of such other employee shall be established to have been the proximate cause of the injury or death; and (3) such act is established to have been of a nature, kind, and degree sufficient to support a finding of serious and willful misconduct under Section 4553 or 4553.1.

the sections has greatly expanded the exceptions to the exclusivity rule, by employing a number of different factors.

Until recently, one such factor present in intentional infliction of emotional distress cases has unfortunately received more attention than it should have. The factor focuses on whether the employee suffered physical injuries, including work disability or mental harm, i.e., anguish, humiliation and embarrassment. If physical injuries occurred, the courts have held workers' compensation was available. Thus, resort to an action at law was unnecessary and the exclusivity doctrine applied. (*Hollywood Refrigeration Sales Co.* v. *Superior Court* (1985) 164 Cal.App.3d 754 [210 Cal.Rptr. 619];[4] *McGee* v. *McNally* (1981) 119 Cal.App.3d 891 [174 Cal.Rptr. 253]; *Gates* v. *Trans Video Corp.* (1979) 93 Cal.App.3d 196 [155 Cal.Rptr. 486]; *Ankeny* v. *Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531 [155 Cal.Rptr. 828].)[5] If the injuries were emotional, it was recognized that workers' compensation provided no remedy. In order to provide some type of compensation to the injured employee, the courts created an exception to the exclusivity doctrine. (*Renteria* v. *County of Orange* (1978) 82 Cal.App.3d 833 [147 Cal.Rptr. 447].)

"(c) In no event, either by legal action or by agreement whether entered into by such other employee or on his behalf, shall the employer be held liable, directly or indirectly, for damages awarded against, or for a liability incurred by such other employee under paragraph (1), or (2) of subdivision (a) of this section.

"(d) No employee shall be held liable, directly or indirectly, to his employer, for injury or death of a coemployee except where the injured employee or his dependents obtain a recovery under subdivision (a) of this section."

[4]In *Hollywood Refrigeration,* it is noteworthy, however, that the plaintiff had already received workers' compensation for all his "special damages," and had signed a compromise and release in which he waived any rights he may have had against his employer and abusing supervisor. The court found the workers' compensation award was res judicata as to all of plaintiff's special damages, leaving only the matter of pain and suffering uncompensated. The court opined that since *the Legislature* had not specifically provided a remedy for such damages, under either workers' compensation or in a suit at law, the court was without power to do so.

*Hollywood Refrigeration* was criticized in *Young* v. *Libbey-Owens Ford Co.* (1985) 168 Cal.App.3d 1037 [214 Cal.Rptr. 400] where the court refused to apply the exclusivity doctrine to an employee's suit against his employer for intentional infliction of emotional distress, resulting in physical and emotional damages.

[5]*Ankeny*'s application of the exclusivity doctrine to nonphysical injury is limited in two respects. First, the opinion takes too narrow a view of *Magliulo* v. *Superior Court* (1975) 47 Cal.App.3d 760 [121 Cal.Rptr. 621], a case that has been given by the various courts precedential weight usually reserved for California Supreme Court decisions. One of the three rationales for the holding in *Magliulo* was an employer should not be able to shield himself from liability for his intentional torts by using the exclusivity doctrine. *Ankeny* gives little heed to this aspect of *Magliulo*. Second, the court concluded the acts alleged in *Ankeny* were not sufficiently outrageous to constitute intentional infliction of emotional distress.

The other two opinions here cited, *McGee* and *Gates,* blindly followed *Ankeny*.

The problems with this approach are twofold. First, "[i]ntentional inflic-tion of emotional distress which results in physical injury and disability is ordinarily more reprehensible than intentional infliction of emotional distress which does not result in disability, [yet] civil action [with its atten-dant higher awards] is allowed only in the latter situation." (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 156 [233 Cal.Rptr. 308, 729 P.2d 743].) The second problem deals with the difficulty of handling a case, such as the one before us, where both physical and mental damages have been pleaded. How do we begin to separate them or to decide that one is more significant than the other, especially when, at this juncture, we are unaware of the extent of either?[6] We believe the time should and has come to cast aside the arbitrary and sometimes irrationally applied "physical versus emotional harm" approach in favor of another factor more logically connected to the workers' compensation or suit-at-law choice. That factor is whether the acts complained of were a "normal part of the employment relationship" (*Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d at p. 160), or, whether the acts were incidents of the employment relationship. (*Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465, 477 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758]; *Young* v. *Libbey-Owens Ford Co., supra,* 168 Cal.App.3d 1037; *Iverson* v. *Atlas Pacific Engineering, supra,* 143 Cal.App.3d 219, 230; *Lagies* v. *Copley* (1980) 110 Cal.App.3d 958, 970 [168 Cal.Rptr. 368]; *Magliulo* v. *Superior Court, supra,* 47 Cal.App.3d 760, 769-770, 777-779.)

In the recent California Supreme Court decision, *Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d 148, an employee sued his employer for "mental and physical disability"[7] resulting from harassment of him during union negotiations, and unfounded disciplinary actions taken against him which included demotions, humiliating work assignments, and salary reduc-tions. He claimed the foregoing acts were done with the intent of causing him emotional distress. The court applied the exclusivity doctrine, holding: "[W]hen the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances,

---

[6]Courts trying to adhere to the physical versus emotional harm approach have been forced to be creative in their treatment of cases involving both types of injuries. Thus, in *McGee* v. *McNally, supra,* 119 Cal.App.3d 891, the court discounted the plaintiff's claim of " 'physical distress and [that he] has been injured in . . . body' " as "oblique references to physical harm." The same court that authored *McGee* was forced to again be creative, albeit more outrageously in *Iverson* v. *Atlas Pacific Engineering* (1983) 143 Cal.App.3d 219 [191 Cal.Rptr. 696], where it held plaintiff's claim of "*loss of hearing,* severe mental anguish, and physical pain and suffering, all of which required the attention of physicians" was primarily a claim for *emotional harm.*

[7]Cole's emotional and physical problems eventually climaxed in a cerebral vascular attack that rendered him unable to do anything other than blink his eyes.

an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability. . . .

*"The cases that have permitted recovery in tort for intentional misconduct causing disability have involved conduct of an employer having a 'questionable' relationship to the employment, an injury which did not occur while the employee was performing service incidental to the employment and which would not be viewed as a risk of the employment, or conduct where the employer . . . stepped out of [his] proper [role]. [Citations.] . . ."*[8] (*Id.,* at pp. 160-161, italics added.)

■ There can be little doubt Campbell's acts, as alleged, had a questionable relationship to employment, and were neither a risk, an incident, nor a normal part of Hart's employment with National. National can be charged with knowledge of the acts by virtue of the fact Hart allegedly reported them to Debbie Adams, and National failed to take action against Campbell. National can be said to have ratified Campbell's tortious conduct, and thus became a joint participant in it. (*Iverson* v. *Atlas Pacific Engineering, supra,* 143 Cal.App.3d at p. 228;[9] *Meyer* v. *Graphic Arts International Union* (1979) 88 Cal.App.3d 176, 178 [151 Cal.Rptr. 597].) Of course, it must be shown National did this for the purpose of causing Hart emotional distress. (*Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d at p. 159; *Johns-Manville Products Corp.* v. *Superior Court, supra,* 27 Cal.3d at p 476.)[10]

We believe Hart has adequately alleged ratification by claiming he reported Campbell's activity to Debbie Adams, and she and Mary Drury "condon[ed] this conduct . . . with knowledge that plaintiff had objected and plaintiff would suffer further emotional and physical distress." If he is able to allege National acted with the intent to injure, he should be permitted to do so. (See, e.g., *McGee* v. *McNally, supra,* 119 Cal.App.3d at p. 896.)

---

[8]In *Young* v. *Libbey-Owens Ford Co., supra,* 168 Cal.App.3d 1037, the court refused to apply the exclusivity doctrine to the employee's cause of action for emotional distress (with attendant physical and emotional damages) arising from his employer's ratification of a coworker's assault on him even though he had already collected compensation. The court held, "[i]ssues such as causation, which must be litigated in a civil suit, are not addressed in a workers' compensation proceeding . . . ." (*Id.,* at p. 1043.)

[9]In *Iverson,* the court held the employer's act of *positive misconduct,* in knowing about the harassing employee's behavior, but doing nothing about it, also creates an exception to Labor Code section 3601, subdivision (c), which provides employers are not liable for physical acts of aggression by coemployees. (143 Cal.App.3d at pp. 227-228.)

[10]In *Johns-Manville,* the court found that Labor Code section 4553's provision for additional workers' compensation where the employer commits "serious and willful conduct" did not apply where the employer commits an act with intent to harm his employee.

Hart alleges National's actions and his injuries occurred during the period August 1982 to May 1983. Certain amendments to the Labor Code became effective January 1, 1983. The acts and injuries occurring after that date are governed by the amendments. (*Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d at p. 153.)

The amendment severely limited one judicially created exception[11] to the exclusivity doctrine,[12] not relevant here, and codified those exceptions dealing with willful physical assaults by the employer, fraudulent concealment by the employer, and the use of defective products manufactured by the employer. Absent from the amendment is any mention of emotional distress. Does this then mean this exception died with the amendment? We think not. The infliction of emotional distress continues to be one wrong for which the workers' compensation system provides no remedy, even after the amendments. Thus, we find ourselves once again in the situation this court faced in *Renteria*—the exception must continue to be viable if injured workers are to have redress for wrongful acts committed by employers. We are also persuaded by language repeated throughout the history of this developing area and most recently reiterated by the Supreme Court in *Cole,*[13] that when employers step out of their roles as such and commit acts which do not fall within the reasonably anticipated conditions of work, they may not then hide behind the shield of workers' compensation. This is as true today as it was before 1983.

---

[11]That exception was the dual capacity doctrine.

[12]Labor Code section 3602 now provides: "(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, except as specifically provided in this section and Sections 3706 and 4558, the sole and exclusive remedy of the employee or his or her dependents against the employer, and the fact that either the employee or the employer also occupied another or dual capacity prior to, or at the time of, the employee's industrial injury shall not permit the employee or his or her dependents to bring an action at law for damages against the employer.

"(b) An employee, or his or her dependents in the event of his or her death, may bring an action at law for damages against the employer, as if this division did not apply, in the following instances:

"(1) Where the employee's injury or death is proximately caused by a willful physical assault by the employer.

"(2) Where the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment, in which case the employer's liability shall be limited to those damages proximately caused by the aggravation. The burden of proof respecting apportionment of damages between the injury and any subsequent aggravation thereof is upon the employer.

"(3) Where the employee's injury or death is proximately caused by a defective product manufactured by the employer and sold, leased, or otherwise transferred for valuable consideration to an independent third person, and that product is thereafter provided for the employee's use by a third person.

"(c) In all cases where the conditions of compensation set forth in Section 3600 do not concur, the liability of the employer shall be the same as if this division had not been enacted."

[13]*Cole,* although decided in 1987, dealt with acts and injuries occuring before January 1983. Thus, the court did not have occasion to discuss the effect of the amendments.

■ We also believe the exclusivity doctrine does not apply to prevent Hart from stating a cause of action against National for assault and battery, if Hart is able to correctly plead such a cause of action. Before 1983, case law held an employee could sue his employer when the latter personally assaulted the employee. (*Magliulo* v. *Superior Court, supra,* 47 Cal.App.3d 760.) The 1983 amendments codified an exception to the exclusivity doctrine when the injury is "caused by a willful physical assault by the employer." (Note, there is no express requirement that the employer *personally* assault the employee.) We believe under the doctrine of ratification (see *Iverson* v. *Atlas Pacific Engineering, supra,* 143 Cal.App.3d 219 ; *Meyer* v. *Graphic Arts International Union, supra,* 88 Cal.App.2d 176), Hart may state a cause of action by alleging National was aware of Campbell's acts in jumping on, grabbing and pinching him, and did nothing to discipline him. Although his complaint, as it currently stands, falls short of doing this, we believe he should be given the chance to amend it if he is able to do so. (See, e.g., *McGee* v. *McNally, supra,* 119 Cal.App.3d at p. 896.)

## IV

### NATIONAL'S LIABILITY FOR PUNITIVE DAMAGES

■ The trial court found National could not be held liable for punitive damages under the assault and battery and intentional infliction of emotional distress causes of action because Hart's pleadings did not fulfill the requirements of Civil Code section 3294.

That section provides: "[W]here the defendant has been guilty of oppression, fraud, or malice, . . . [¶] An employer shall not be liable for [punitive] damages . . . based upon acts of [his] employee . . . unless the employer . . . ratified the wrongful conduct . . . or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the . . . ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."

In *Coats* v. *Construction & Gen. Laborers Local No. 185, supra,* 15 Cal.App.3d 908, a union's officers were informed its employees assaulted a union member, but it refused to discipline the employee. The court found the union's failure to discharge or discipline the offending employees amounted to ratification which justified an award of punitive damages against the employer under Civil Code section 3294, subdivision (b). (See also *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 67 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)

Hart alleged and testified in his deposition that he told Debbie Adams throughout the August 1982 - May 1983 period that Campbell was harassing him. He alleged and testified that Mary Drury was informed of Campbell's actions and the effect they were having on Hart the day he resigned. Evidently, nothing was done to punish Campbell.[14]

If plaintiff can show that Debbie Adams's knowledge of the harassment early on and failure to take action or Mary Drury's later knowledge and failure to act constitutes ratification imputable to National, he is entitled to punitive damages. In the alternative, he may be able to demonstrate Campbell was an "officer, director or managing agent" of National,[15] and he committed acts of "oppression . . . or malice." In order to comply with Civil Code section 3294, subdivision (b), Hart should amend his pleading to allege either set of circumstances.

### DISPOSITION

The judgment is affirmed as to the first cause of action. As to the remaining three, it is reversed and remanded to the trial court. Each party shall bear its costs on appeal.

Campbell, P. J., and McDaniel, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 17, 1987. Kaufman, J., did not participate therein.

---

[14]At the time of the suit, Campbell had been promoted to director of National's customer service department.

[15]Those provisions of the depositions before us do not disclose the precise corporate structure of National.