*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-AA-254

05/17/2018

FILED
District of Columbia
Court of Appeals

*Julio Castillo*
Clerk of Court

RONDA L. NUNNALLY, PETITIONER,

v.

DISTRICT OF COLUMBIA POLICE & FIREFIGHTERS'
RETIREMENT & RELIEF BOARD, RESPONDENT.

On Petition for Review of an Order of the District
of Columbia Police and Firefighters' Retirement and Relief Board
(PD-1297-07)

(Argued January 12, 2017      Decided May 17, 2018)

*Frederic W. Schwartz, Jr.*, for petitioner.

*James C. McKay, Jr.*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for respondent.

Before FISHER and BECKWITH, *Associate Judges*, and PRYOR, *Senior Judge*.

BECKWITH, *Associate Judge*: Ronda Nunnally,[1] a former lieutenant in the

---

  [1] Although Lt. Nunnally's first name appears as "Rhonda" in the pleadings and Superior Court decision in this case, our review of the record shows that Lt. Nunnally spells her name "Ronda."

Metropolitan Police Department (MPD), was retired on disability by the District of Columbia Police and Firefighters' Retirement and Relief Board. She seeks review of the Board's decision that her injury was not incurred in the performance of duty and that she is therefore not entitled to more generous retirement benefits. Lt. Nunnally relies principally on *Nunnally v. District of Columbia Metropolitan Police Department*, 80 A.3d 1004 (D.C. 2013), a prior case of Lt. Nunnally's in which we concluded that, for purposes of the statute governing sick leave for public employees, D.C. Code § 1-612.03 (j), Lt. Nunnally's injury resulted from the performance of duty. *Id.* at 1010–13.

We conclude that the question here is controlled not by *Nunnally* but by our decision in *Estate of Underwood v. National Credit Union Administration*, 665 A.2d 621 (D.C. 1995). *Underwood* held that a disabling injury caused by workplace sexual harassment could not be an injury "arising out of . . . employment" and was thus not compensable under the Workers' Compensation Act, D.C. Code § 36-301 *et seq.* (1993 Repl.), the private sector equivalent of the Police and Firefighters Retirement and Disability Act—or PFRDA, D.C. Code §§ 5-701 to -724—which is D.C.'s workers' compensation plan for firefighters and police officers like Lt. Nunnally. 665 A.2d at 630. Although Lt. Nunnally makes a formidable argument that we should interpret "performance of duty" in the PFRDA as we construed the same phrase in the sick leave statute at issue in

*Nunnally*, we ultimately conclude that doing so would spark a much more substantive inconsistency in our case law by evading the rationale underlying our decision in *Underwood* and creating a legal anomaly in which our case law treats workplace sexual harassment differently for police officers and firefighters than for other employees in the city. For the reasons explained more fully in this opinion, we affirm the Board's decision in this case.

**I.**

In 2004, Ronda Nunnally filed an internal MPD complaint alleging that she was being sexually harassed by her supervisor. After an investigation, the MPD terminated the supervisor.[2] Three years later, Lt. Nunnally reported to the Police and Fire Clinic that she had undergone several years of workplace stress and abuse related to the sexual harassment and to retaliation for reporting it. The clinic recommended that Lt. Nunnally be retired as disabled, and the Police and Firefighters' Retirement and Relief Board accepted this recommendation, finding by a preponderance of the evidence that Lt. Nunnally was incapacitated for further duty. The Board further concluded that, even viewing Lt. Nunnally's allegations

---

[2] Lt. Nunnally also filed a civil complaint in Superior Court based on the same allegations against her supervisor and the District of Columbia. *See Nunnally v. Graham*, 56 A.3d 130 (D.C. 2012).

of sexual harassment and retaliation in the light most favorable to her, the Board was foreclosed by our decision in *Underwood* from classifying the injury that gave rise to her disability as an injury incurred in the performance of her official duties. Lt. Nunnally was therefore entitled to an annuity under D.C. Code § 5-709 (b)[3]—which spells out retirement benefits for those who became disabled due to injury received "other than in the performance of duty"—rather than the more generous annuity provided under § 5-710 (e) for police officers who sustain injuries "in the performance of duty" (POD injuries).[4]

Lt. Nunnally appealed the Board's decision to this court, and we summarily remanded the case to the Board for further consideration in light of our holding, in Lt. Nunnally's separate appeal of the MPD's decision to charge her sick leave account for a lengthy absence from work, that the psychological injury she alleged—the same injury giving rise to her disability in this case—was an "injury . . . resulting from the performance of duty" under the sick leave statute, D.C. Code

---

[3] All D.C. Code citations are to the 2012 replacement volume unless otherwise indicated.

[4] Specifically, annuities for non-POD injuries under § 5-709 (b) must be at least 30% of the officer's salary at the time of retirement, while the minimum annuity for POD injuries under § 5-710 (e) is 40% of that salary. The Board awarded Lt. Nunnally an annuity equal to approximately 35% of her salary at the time of her retirement.

§ 1-612.03 (j). *See Nunnally*, 80 A.3d at 1010–13. The Board issued a new final order reaffirming its previous conclusion that Lt. Nunnally's injury was not incurred in the performance of duty. While taking notice of our holding in *Nunnally*, the Board decided that it was still precluded by *Underwood* from finding injuries caused by sexual harassment to be POD injuries. Lt. Nunnally appealed again from this order.

## II.

The question before us on appeal is whether the Board was correct in determining that *Underwood* compelled the conclusion that Lt. Nunnally's injury was not sustained in the performance of duty under the provisions of PFRDA that set forth the annuities for those who have been retired on disability. *See* D.C. Code §§ 5-709 (b) and -710 (e). As "[a]n agency's interpretation of our case law does not trigger any obligation of deference on our part," we review that question de novo.[5] *Nunnally*, 80 A.3d at 1012; *cf. O'Rourke v. District of Columbia Police &*

---

[5] To the extent our analysis entails a more straightforward interpretation of the phrase "in the performance of duty" under D.C. Code §§ 5-709 (b) and -710 (e), our review is also de novo, as "we are presumed to have the greater expertise when the agency's decision rests on a question of law, and we therefore remain 'the final authority on issues of statutory construction.'" *Nunnally*, 80 A.3d at 1010. "Where we determine that a statutory term is ambiguous, however, we must defer to an agency's interpretation of that ambiguity that is reasonable and not plainly wrong or inconsistent with the legislature's intent." *Id.*; *see also MorphoTrust*

(continued…)

*Firefighters' Ret. & Relief Bd.*, 46 A.3d 378, 383 (D.C. 2012).

Both of the statutes governing annuity rates for officers retired on disability are components of the PFRDA, which "serves as the worker's compensation plan for the District's police and firefighters." *O'Rourke*, 46 A.3d at 389; *see also Vargo v. Barry*, 667 A.2d 98, 101 n.4 (D.C. 1995). Like other such schemes, the PFRDA provides swift and certain compensation, but that compensation is limited and other remedies, such as common law suits, are precluded. This reflects "the public policy trade-off implicit in workers' compensation statutes—substituting limited liability without fault for the right to sue in court." *Vargo*, 667 A.2d at 101.

Lt. Nunnally primarily argues that our decision in *Nunnally*, which examines the same language in a different context, controls this case. In her view, the phrase "performance of duty" should have the same meaning in the context of retirement for disability as it does for sick leave benefits. As noted above, we held in

---

(...continued)
*USA, Inc. v. District of Columbia Contract Appeals Bd.*, 115 A.3d 571, 583 (D.C. 2015) ("In accordance with the Supreme Court's decision in *Chevron*, . . . before we afford some deference to an agency's interpretation of the statute that it administers at least two conditions must be met: (1) the statutory language in question must be ambiguous, and (2) the agency's interpretation must be reasonable.").

*Nunnally* that Lt. Nunnally's psychological injury was incurred in the "performance of duty" under the statute governing public employees' sick leave. 80 A.3d at 1013. Although only that statute, D.C. Code § 1-612.03 (j)—a part of the Comprehensive Merit Personnel Act of 1978 (CMPA)[6]—was at issue in *Nunnally*, we drew parallels to the PFRDA, stating that "[o]ur understanding of 'performance of duty' under D.C. Code § 1–612.03 (j)" was "in line with this court's broad interpretation of the same phrase when used in the related context" of the PFRDA.[7] *Id.* at 1011.

Nothwithstanding the analogy this court drew between the PFRDA and the sick leave statute in *Nunnally*, the Board deemed this case to be controlled by *Underwood*. In *Underwood*, this court acknowledged precedents holding that emotional distress claims *not* based on sexual harassment might be compensable under the Workers' Compensation Act (WCA), which defines a compensable injury as an "accidental injury or death arising out of and in the course of employment, . . . includ[ing] an injury caused by the willful act of third persons

---

[6] D.C. Code §§ 1–601.01 to –636.03.

[7] In *Nunnally* we noted a further "linkage" between the sick leave statute and the PFRDA: D.C. Code § 5-708.01, a provision the D.C. Council added to the PFRDA in 2004 that governs claims processing for alleged POD injuries under § 1–612.03 (j). 80 A.3d at 1011 n.14.

directed against an employee because of his [or her] employment." 665 A.2d at 631–32 & 633 (quoting D.C. Code § 32-1501 (12)). Special considerations led the court to reach a different result, however, "when emotional distress allegedly attributable to sexual harassment (in contrast with some other cause) results in disabling injuries[.]" *Id.* at 632–33. Based on what it called a "significant policy consideration," *id.* at 637, the court in *Underwood* concluded that workplace sexual harassment was "unrelated to any work task" and could not be an injury "arising out of . . . employment."[8] *Id.* at 634, 637. That policy consideration was the likelihood that declaring injuries from workplace sexual harassment to be compensable in workers' compensation "would frustrate implementation of the Human Rights Act," *id.* at 637, the local human rights law that prohibits sex discrimination, including sexual harassment, and provides both a private cause of

---

[8] Indeed, the court noted, sexual harassment was forbidden by the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 to -1403. And while compensable injuries to police officers may often arise out of activity prohibited by a statute, *see, e.g.*, *O'Rourke*, 46 A.3d at 381 (officer injured while chasing suspected carjacker), such injuries are contemplated by law as potential hazards of employment as a police officer. By contrast, the Human Rights Act does not treat sex discrimination—including sexual harassment—as an odds-on occurrence that is incidental to employment. *Cf. Bennett v. Furr's Cafeterias, Inc.*, 549 F. Supp. 887, 890 (D. Colo. 1982) (denying defendant's request for summary judgment on plaintiff's sexual-harassment-related claims for assault and battery and outrageous conduct, stating that "[i]ndeed, it would appear to lie outside the bounds of reason to propose that the sort of sexual assault and harassment heretofore described and the emotional trauma alleged to have been caused thereby result from risks inherent to the position of a 'management trainee.'").

action and an administrative remedy through the Office of Human Rights. *See* D.C. Code § 2-1403.16 (private cause of action) and § 2-1403.04 (administrative remedy).

As a workers' compensation scheme, the WCA provides an exclusive remedy against the employer for injuries within its scope, preempting causes of action based on the same alleged injuries. D.C. Code § 32-1504. The difficulty in deeming sexual harassment claims to be covered under the WCA was not, however, that the workers' compensation statute would preempt the Human Rights Act's remedies, and no one in *Underwood* argued that.[9] 665 A.2d at 631. Instead, the concern of this court at the time, and of many courts considering appeals from the dismissal of sexual harassment suits, was the ability of sexual harassment

---

[9] The Board in its decision misunderstood *Underwood* to have expressed concern that a WCA remedy would preempt Human Rights Act remedies, and the parties in their briefs have either shared that misunderstanding or failed to challenge it. In fact, *Underwood* emphasized as "important background" its understanding—shared by the parties in that case—that the question of WCA preemption would not have arisen had the case contained a Human Rights Act claim. 665 A.2d at 631. It was because the "case no longer contain[ed] a statutory sexual harassment claim" after the jury rejected that claim that the employer contended that "the WCA—the only statute now in the picture—preempted a lawsuit for a common law tort," which was the sole claim remaining in the plaintiff's case. *Id.*; *cf. Johnson v. District of Columbia*, 528 F.3d 969, 978 (D.C. Cir. 2008) (affirming dismissal of common law claims on ground that PFRDA was officer's exclusive remedy against the District but remanding to allow statutory claim to go to trial).

victims to obtain full and appropriate relief, particularly under tort theories—assault, infliction of emotional distress, defamation, battery, invasion of privacy, and the tort of "outrage," among others—that typically accompany a plaintiff's statutory sexual harassment claims.[10]

Such tort claims, "when premised on alleged disability from sexual harassment," would be preempted if a WCA remedy were available, which would

---

[10] *See, e.g.*, *Anderson v. Save-A-Lot, Ltd.*, 989 S.W.2d 277, 290 (Tenn. 1999) (noting that a ruling that employee plaintiffs can recover worker's compensation for injuries stemming from sexual harassment could "thwart the intent of the framers of the [Tennessee Human Rights Act] to provide sexual harassment victims with a full recovery"). The Tennessee Supreme Court, which was considering an employee's appeal from the denial of workers' compensation for emotional injuries caused by sexual harassment by a manager, acknowledged that most of the published decisions on this subject involve circumstances in which "the employee plaintiffs were seeking to recover under tort theories or pursuant to civil rights legislation." *Id.* at 282. The court in *Anderson*, in a decision expressly intended to protect sexual harassment victims' ability to recover for their injuries, ruled against the plaintiff, who was seeking worker's compensation, not the right to sue for sexual harassment. The court even ended its opinion with a quotation denigrating the value of the relief the employee was seeking: "Except for the convenience of employers and the flimsy benefit the victims of sexual harassment might achieve by quicker, but much smaller awards, it is difficult to conjure a reason for workers' compensation courts handling sexual-harassment cases." *Anderson*, 989 S.W.2d at 290 (quoting Darryll M. Halcomb Lewis, *Sexual Harassment Under Workers' Compensation Law*, 44 Labor L.J. 297, 306 (1993)). Both *Anderson* and Ms. Nunnally's present appeal serve as a reminder that employees seeking remedies for workplace sexual harassment are not a homogeneous group, that their claims arise in countless ways, and that *Underwood*'s holding that injuries caused by workplace sexual harassment do not arise out of employment will effectively prevent recovery for some victims whose claims or circumstances may not be conducive to a lawsuit.

"frustrate Human Rights Act policy" in several ways.[11]  *Id.* at 637.  Plaintiffs would be forced to split their claims between two forums, rather than attaching their tort claims to their Human Rights Act claims in court; to "settle for a remedy out of keeping with the kind of injury involved," given the "severe cap on allowable recovery" in workers' compensation; and to face the specter of issue preclusion, which could doom a civil claim based on earlier findings by a workers' compensation tribunal.  *Id.* at 637–38.  We also noted that judicial economy would be disserved by encouraging claim-splitting and that a workers' compensation agency lacks expertise in adjudicating claims of emotional distress based on sexual harassment.  *Id.* at 637.  These considerations contributed to *Underwood*'s holding that "disabling injuries from emotional distress caused by sexual harassment . . . 'clearly are not compensable under the [WCA].'"  *Id.* at 633 (quoting *Harrington v. Moss*, 407 A.2d 658, 661 (D.C. 1979)).  The *Underwood* court's rationale echoes that which many courts in other jurisdictions have relied upon in likewise holding that those states' workers' compensation laws do not bar tort suits related

---

[11]  *Underwood* urged caution regarding the scope of sexual harassment claims excluded from workers' compensation.  *Id.* at 633 n.18.  Here, we are not confronted with a case in which sexual harassment and related retaliation account for only one portion of an injury due to emotional distress; "for example, a pattern of actionable emotional abuse by a supervisor over a period of months or years with no perceptible sexual content, followed by the supervisor's effort over succeeding months to reorient the relationship through sexual overtures and threats."  *Id.*

to sexual harassment. *See, e.g.*, *Hart v. National Mortg. & Land Co.*, 235 Cal. Rptr. 68, 75 (Cal. Ct. App. 1987) (stating that "when employers step out of their roles as such and commit acts which do not fall within the reasonably anticipated conditions of work, they may not then hide behind the shield of workers' compensation"); *Dunn v Warhol*, 778 F. Supp. 242, 244 (E.D. Pa. 1991) (rejecting employer's argument that Pennsylvania's workers' compensation act provided exclusive remedy for sexual harassment claim, stating that "it does not follow" that "sexual harassment by a supervisor who also happens to be the victim's employer is related to the scope of her employment"); *Harrison v. Edison Bros. Apparel Stores, Inc.*, 724 F. Supp 1185, 1191 (M.D.N.C. 1989) (rejecting employer's argument that the injuries resulting from sexual harassment "are a natural risk of employment" and that North Carolina's workers' compensation act therefore provided exclusive remedy for plaintiff's negligent-retention claim), *remanded on other grounds*, 924 F.2d 530 (4th Cir. 1991); *cf. Lucero-Nelson v. Washington Metropolitan Area Transit Authority*, 1 F. Supp. 2d 1, 8–10 (D.D.C. 1998) (applying *Underwood* to deny employer's request for summary judgment on the emotional distress claims that accompanied the employee's Title VII and Human Rights Act sexual harassment claims).[12]

---

[12]  A deep split has emerged in state courts—and in federal courts applying

(continued…)

Like the WCA, the PFRDA provides a comprehensive and therefore exclusive compensation scheme. *See Lewis v. District of Columbia*, 499 A.2d 911, 913 (D.C. 1985); *Johnson v. District of Columbia*, 528 F.3d 969, 978 (D.C. Cir. 2008).[13] And while the WCA's language regarding its coverage of injuries

_____

(…continued)

state law—regarding the extent to which the exclusivity provisions of worker's compensation laws preclude plaintiffs' lawsuits for sexual harassment and related common law torts. Many courts have concluded that such claims do arise out of employment and that their workers' compensation scheme is the exclusive remedy. *See, e.g.*, *Guess v. Bethlehem Steel Corp.,* 913 F.2d 463, 465–66 (7th Cir. 1990) (affirming dismissal of plaintiff's sexual-harassment-related tort claims based on Indiana precedent establishing that such claims are "within the exclusive jurisdiction of the workmen's compensation law"); *Doe v. Purity Supreme, Inc.*, 664 N.E.2d 815, 819 (Mass. 1996) (holding that the state's workers' compensation act barred the plaintiff's common law claims because "the assistant store manager is alleged to have raped an employee during work hours on the employer's premises" and noting that "the Legislature has provided employees with a separate remedy for sexual harassment"); *Campbell v. Jackson Bus. Forms Co.*, 841 F. Supp. 772, 774 (S.D. Miss. 1994) (ruling that the Mississippi workers' compensation law barred the plaintiff's common law negligent-supervision-of-employees claim "[b]ecause Campbell alleges that her claim arose out of the employer-employee relationship" between her and the employer "and because the tort claim is clearly grounded in negligence").

[13] Unlike the WCA and the CMPA, *see* D.C. Code § 32-1504 (b), § 1-623.16 (c), the PFRDA contains no exclusivity provision stating that it is an officer's sole remedy for injuries that fall within the Act's parameters. In *Lewis*, we nevertheless adopted the "principle . . . of long-standing application" that a comprehensive system of compensation set up to provide a remedy for employment-related injuries "is presumed to be the exclusive means of redress against the government for all persons eligible for the system's benefits" even in the absence of statutory

(continued…)

"arising out of and in the course of employment" differs from the PFRDA's coverage of injuries incurred "in the performance of duty," the CMPA's performance-of-duty language is "conceptually close" to the WCA standard and has been construed in some agency decisions as "requiring that the 'injury arise out of and in the course of employment,' the same standard used under the WCA." *McCamey v. District of Columbia Dep't of Emp't Servs.*, 947 A.2d 1191, 1200 (D.C. 2008) (en banc). *See also King v. Kidd*, 640 A.2d 656, 664 (D.C. 1993) (finding "no basis to conclude that CMPA's remedial system preempts Kidd's tort claim of intentional infliction of emotional distress based on acts of sexual harassment and subsequent retaliation"); *Underwood*, 665 A.2d at 636 ("We perceive no distinction between public and private employment that could warrant a different result from *King* under the WCA, unless there are differences between CMPA and the WCA that would so require[.]"). Lt. Nunnally's claim that she should receive a higher minimum annuity under the PFRDA (as opposed to a less generous annuity with the option to file a tort claim) is admittedly contextually distinct from the typical workers' compensation claim seeking payment, for example, of medical expenses stemming from an on-the-job injury. But we cannot

---

(…continued)
language confirming the compensation scheme's exclusivity. 499 A.2d at 912–913 (quoting *Granade v. United States*, 356 F.2d 837, 840 (2d Cir. 1966)).

fairly characterize this claim as falling outside the rationale of *Underwood.* *See Lewis,* 499 A.2d at 913 (listing the PFRDA's provisions for POD retirement disability and non-POD retirement disability, among other provisions, as grounds for concluding the PFRDA "is comprehensive, and thus exclusive"); *Ray v. District of Columbia*, 535 A.2d 868, 870–71 (D.C. 1987) (rejecting a firefighter's contention that a civil action was available for claims arising from injuries that were not on-the-job injuries but were suffered while he was retired on disability, as such injuries were "within [the] range of consequences to which [PRFDA] affords the exclusive remedy").

Lt. Nunnally's *Nunnally*-based argument is not without force. It is awkward to classify a single injury as an injury "resulting from the performance of duty" under D.C. Code § 1-612.03 (j) but as an "injury received . . . other than in the performance of duty" under D.C. Code § 5-709 (b). The natural presumption that the same term should be interpreted consistently in different statutes, however, is far from irrebuttable. Even within the same statute a term "may take on distinct characters from association with distinct statutory objects calling for different implementation strategies." *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 573–74 (2007); *see also Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932). The presumption of identical meaning may be even weaker where, as here, the two statutes were enacted at different times by different legislatures. The

CMPA, including the sick leave statute, was enacted by the District of Columbia Council in 1979, while the relevant PFRDA provisions were enacted by Congress in 1916 and amended by Congress in 1957 and 1979.[14]

In the end, interpreting "performance of duty" in the PFRDA in line with what we have determined that phrase means in the sick leave statute would bring about a more significant peculiarity: workplace sexual harassment would be treated differently for police and firefighters than for everyone else in the District. For private sector workers, injuries from sexual harassment are not compensable in workers' compensation and the courts remain open to common law claims, *Underwood*, 665 A.2d at 638, and a similar rule applies for most public sector workers, *King*, 640 A.2d at 664. Only police officers and firefighters alleging sexual harassment would be relegated to the exclusive and limited remedies of workers' compensation. In the absence of any legislative intent or apparent rationale supporting this distinction, our decision in *Underwood* precludes us from

---

[14] As originally enacted, the PFRDA spoke of injuries incurred "in the line of duty." Act of Sept. 1, 1916, ch. 433, § 12, 39 Stat. 678, 718; *see also Dougherty v. United States ex rel. Roberts*, 30 F.2d 471, 471–72 (D.C. Cir. 1929). The 1957 amendments introduced the "performance of duty" language to this section. Police and Firemen's Retirement and Disability Act Amendments of 1957, Pub. L. No. 85-157, § 3, 71 Stat. 391, 394–95 (1957).

causing this arbitrary and anomalous result.[15] We therefore hold that injuries from sexual harassment are not injuries incurred "in the performance of duty" under D.C. Code §§ 5-709 (b) and -710 (e).

## III.

For the reasons in this opinion, we affirm the Board's conclusion that Lt. Nunnally's injury was "received . . . other than in the performance of duty." D.C. Code § 5-709 (b).

*So ordered.*

---

[15] Lt. Nunnally also relies on *Pierce v. District of Columbia Police and Firefighters' Retirement & Relief Board*, 882 A.2d 199 (D.C. 2005). The claimant in *Pierce* argued that the disabling mental illness for which she was retired from the MPD was due to a POD injury—namely workplace harassment and discrimination. *Id.* at 203–04. Most of the harassment she alleged was nonsexual, but she did assert that "she was inappropriately touched by a male supervisor, while another male supervisor would ask her to kiss him." *Id.* at 209. We noted that if true this allegation could be "a basis for recovery," but concluded that the Board had a reasoned basis for believing these acts had never occurred. *Id.* We do not read this single sentence in *Pierce*—which was unnecessary to the result, did not specify the means of whatever recovery it contemplated, and did not cite the contrary precedent of *Underwood* or attempt to reconcile its conclusion—as having settled the question whether sexual harassment was compensable in workers' compensation. *See Murphy v. McCloud*, 650 A.2d 202, 205 (D.C. 1994) ("The rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question." (quoting *Fletcher v. Scott*, 277 N.W. 270, 272 (Minn. 1938))).