Diane MILLER and Pamela Lewis,
Plaintiffs–Appellants,

v.

FAIRCHILD INDUSTRIES, INC., a
Maryland Corporation,
Defendant–Appellee.

No. 87–6325.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 1, 1988.

Withdrawn from Submission
Aug. 2, 1988.

Resubmitted May 23, 1989.

Decided May 23, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc Sept. 19, 1989.

Tyron J. Sheppard, Los Angeles, Cal., for plaintiffs-appellants.

Andrew C. Peterson, Los Angeles, Cal., for defendant-appellee.

Before FLETCHER, PREGERSON and CANBY, Circuit Judges.

FLETCHER, Circuit Judge:

Pamela Lewis and Diane Miller appeal the district court's dismissal of their Title VII claim alleging that Fairchild Industries discharged them in retaliation for filing discrimination charges with the Equal Employment Opportunity Commission (EEOC). They also appeal the district court's dismissal of their claims for the negligent and intentional infliction of emotional distress, the directed verdict on their retaliation claims brought under 42 U.S.C. § 1981 and the California Fair Employment and Housing Act (CFEHA), and the directed verdict on their claims for breach of contract, tortious breach of the implied covenant of good faith and fair dealing, and fraud. Finally, they appeal a number of the district court's pretrial rulings and evidentiary rulings during trial. We affirm the directed verdict on the tortious breach claim, but reverse the dismissal of the Title VII claim and the emotional distress claims and the directed verdict on the breach of contract, fraud, Section 1981, and CFEHA claims. We remand for a new trial.[1]

---

1. This matter is before this court for the second time. We previously reversed the district court's grant of summary judgment on all causes of action and remanded for trial. *See Miller v. Fairchild Industries, Inc.,* 797 F.2d 727 (9th Cir.1986).

## BACKGROUND

Fairchild Control Systems, Inc., a division of Fairchild Industries, is primarily a government contractor. At the time of their discharge, Diane Miller worked for Fairchild as a contracts administrator and Pamela Lewis was employed as a junior designer. Both were the only black women in their respective positions.

Miller was first employed by Fairchild in 1974 as a clerk typist. In 1980, she was promoted to the non-clerical position of contracts administrator. Miller maintained a good relationship with her supervisor, Stan Peterson, until December 1981 when the work space for the Contracts Department was redesigned and Miller expressed dissatisfaction with the location of her new office. Shortly thereafter, Miller received a good overall performance evaluation, but was denied a merit increase due to her record of absenteeism. After complaining to Supervisor Peterson and other Fairchild management personnel and receiving an unsatisfactory response, Miller filed an EEOC charge alleging race and sex discrimination.

Fairchild denied the discrimination charge, and the EEOC held a fact-finding conference on September 1, 1982. At that conference, Fairchild entered into a settlement agreement with Miller whereby Miller gave up her right to sue for discrimination under Title VII, and Fairchild promised to review the denial of Miller's merit increase and to provide Miller with training opportunities on an equal basis with similarly situated employees.[2]

Pamela Lewis began working in Fairchild's Engineering Department in 1979 as a draftsperson, and in 1981, she was promoted to junior designer. Lewis's supervisor, Glenn Ray, repeatedly denied her requests to take training courses, including classes to train on Fairchild's newly purchased computer-aided design and computer-aided manufacturing system (Cad/Cam). Lewis filed an EEOC charge of race and sex discrimination alleging that Ray denied

her training opportunities provided to male Caucasian designers.

Fairchild denied the discrimination charge and the EEOC held a fact-finding conference on September 24, 1982. Fairchild entered into an agreement with Lewis in which it promised to transfer Lewis to a different supervisor within the Engineering Department, to allow Lewis to begin Cad/Cam training and to attend subsequent courses, and to remove any negative materials from Lewis's personnel file. Lewis, for her part, waived her right to file a Title VII lawsuit for discrimination.

On November 5, 1982, less than two months after Miller and Lewis signed their settlement agreements with Fairchild, the company laid them off, citing economic reasons. Although other Fairchild employees were laid off at the same time, Miller was the only contracts administrator and Lewis was the only designer discharged.

On May 27, 1983, Miller and Lewis brought this action alleging that Fairchild discharged them in retaliation for filing EEOC complaints, in violation of (1) Title VII of the 1964 Civil Rights Act, (2) 42 U.S.C. § 1981 (Section 1981), and (3) the California Fair Employment and Housing Act (CFEHA). Miller and Lewis also allege that Fairchild breached the EEOC settlement agreements and the implied covenant of good faith and fair dealing, committed fraud, and intentionally or negligently inflicted serious emotional distress.

On November 26, 1984, the district court granted Fairchild's motion for summary judgment on all causes of action. This court reversed and remanded for trial after concluding that Miller and Lewis had presented triable factual issues on all claims. *Miller v. Fairchild Industries, Inc.,* 797 F.2d 727 (9th Cir.1986).

In pretrial proceedings, the district court granted Fairchild's motion to bifurcate the trial on issues of liability and damages, dismissed the emotional distress claims as preempted by the California Workers Com-

---

**2.** Additionally, Fairchild promised to reaffirm its commitment to equal employment opportunity for all persons. Miller promised to check

monthly with her supervisor to assure her absences were within acceptable limits.

pensation Act, and ruled on Fairchild's eight motions in limine. Miller and Lewis appeal from the district court's pretrial rulings excluding parol evidence, determining the allocation of proof on the retaliation claims, dismissing punitive damages as to their negligence and breach of contract claims, excluding the testimony of four lay witnesses, excluding the testimony of one expert witness, excluding statements regarding "statistical significance," and excluding evidence of hirings after their layoffs.

A three day jury trial commenced on May 5, 1987. The Title VII claim was tried to the court, and the remaining claims were tried to the jury. Miller and Lewis appeal four of the district court's evidentiary rulings during trial.

After both sides rested, the district court granted Fairchild's motion to dismiss appellants' Title VII retaliation claim under Fed. R.Civ.P. 41(b), and directed a verdict for Fairchild on the remaining claims under Fed.R.Civ.P. 50(a). The district court found that no reasonable jury could find in favor of Miller and Lewis based on the evidence presented.

## DISCUSSION

### I. STANDARD OF REVIEW

We review the district court's involuntary dismissal of appellant's Title VII claim under the same standard applied to a judgment following a bench trial. *See Stone v. Millstein*, 804 F.2d 1434, 1437 (9th Cir. 1986). The district court's findings of fact are reviewed for clear error and its legal conclusions are reviewed de novo. *Id.* We review for clear error the district court's factual finding that Lewis and Miller were not subject to discriminatory retaliation in violation of Title VII. *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1444 (9th Cir.1985).

We review de novo the propriety of the directed verdict on the remaining claims. *See Donoghue v. Orange County*, 848 F.2d 926, 932 (9th Cir.1988). We view the evidence in the light most favorable to the appellants, drawing all possible inferences in their favor, to determine if there is sub-

stantial evidence supporting a verdict for Miller and Lewis. *See Donoghue*, 848 F.2d at 932; *Lucas v. Bechtel Corp.*, 800 F.2d 839, 850 (9th Cir.1986). A directed verdict is proper when the evidence permits only one reasonable conclusion. *Donoghue*, 848 F.2d at 932.

We review the district court's pretrial dismissal of the emotional distress and the punitive damages claims de novo. *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir.1984). The district court's ruling with respect to parol evidence was based on the application of principles of contract interpretation and is reviewed de novo. *Miller v. Safeco Title Insurance Co., Inc.*, 758 F.2d 364, 367 (9th Cir.1985). We review the district court's evidentiary rulings and its decision to bifurcate the trial for an abuse of discretion. *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir.1982) (decision to bifurcate); *Kisor v. Johns–Manville Corp.*, 783 F.2d 1337, 1340 (9th Cir.1986) (evidentiary rulings).

## II. RETALIATORY DISCHARGE CLAIMS

Lewis and Miller allege that they were laid off by Fairchild in retaliation for filing charges with the EEOC in violation of Title VII, Section 1981 and the CFEHA.

Under Section 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000c–3(a), an employer may not retaliate against an employee for opposing discriminatory employment practices. *See Miller*, 797 F.2d at 730; *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1011 (9th Cir. 1983). Section 1981 provides an independent but overlapping federal remedy for intentional racial discrimination in employment. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975); *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985), *amended by* 784 F.2d 1407 (9th Cir. 1986). Because facts sufficient to give rise to a Title VII claim may also support a Section 1981 claim, an employee may seek relief for a retaliatory discharge under both provisions. *See Miller*, 797 F.2d at

733.[3] Finally, Cal.Gov't Code § 12940(f) (West Supp.1988) prohibits an employer from discharging an employee for engaging in protected activities under the CFE-HA. *See Miller,* 797 F.2d at 733.

After the presentation of all evidence, the district court dismissed the Title VII claim and directed a defense verdict on the Section 1981 and CFEHA claims after finding that (1) Fairchild had presented "a strong and compelling case" that the discharges were "business necessit[ies]" and (2) Miller and Lewis had failed to present any evidence to show Fairchild's legitimate explanation was merely a pretext for retaliation. After a full trial on a retaliatory discharge claim, the trier of fact must decide whether the plaintiff has met her burden of showing that "the employment decision more likely than not was motivated by a discriminatory reason.... [T]his burden is ... carried if the plaintiff shows 'that the employer's proffered explanation is unworthy of credence.'" *U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 718–19, 103 S.Ct. 1478, 1483, 75 L.Ed.2d 403 (1982) (Blackmun, J., concurring).[4]

Fairchild presented substantial evidence supporting its explanation that Miller and Lewis, the least skilled employees in their respective departments, were laid off because Fairchild had a shrinking need for labor caused by an ongoing economic decline. Fairchild's former Finance Director, Jack Brucker, testified that from 1981 to 1983, the company experienced declining sales and periodic layoffs due primarily to the diminished needs of the Space Shuttle program.[5] In October 1982, after Congress failed to appropriate funds to build the fifth Space Shuttle, Fairchild management determined that additional layoffs were necessary because existing and anticipated contract budgets could not support the current staff. Brucker determined the number of employees to be cut from each department and, in compliance with Fairchild's stated procedure, department heads assessed the comparative skills of their members to determine which individuals should be laid off.[6] Lewis and Miller were selected for layoff because their supervisors allegedly determined they were the

---

3. *See also Greenwood v. Ross,* 778 F.2d 448, 455 (8th Cir.1985) (Section 1981 establishes a substantive right to be free from retaliatory discharge); *Goff v. Continental Oil Co.,* 678 F.2d 593 (5th Cir.1982) (Section 1981 encompasses retaliation claim based on an employer taking adverse action against an employee who filed an EEOC racial discrimination charge).

4. The three stage order and allocation of proof for Title VII disparate treatment suits set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), governs actions for retaliatory discharge brought under Title VII, Section 1981, and the CFEHA. *See Sorosky v. Burroughs Corp.,* 826 F.2d 794, 803 (9th Cir.1987) (CFEHA age discrimination claim); *Yartzoff v. Thomas,* 809 F.2d 1371, 1375 (9th Cir.1987) (Title VII retaliation claim); *Lowe,* 775 F.2d at 1010 (Section 1981 claim).

First, the plaintiff must establish a prima facie case of retaliation. *Yartzoff,* 809 F.2d at 1375; *Wrighten v. Metropolitan Hospitals, Inc.,* 726 F.2d 1346, 1354 (9th Cir.1984). The burden of production then shifts to the defendant-employer to articulate a legitimate, non-retaliatory explanation for the adverse employment action. *Yartzoff,* 809 F.2d at 1376; *Wrighten,* 726 F.2d at 1354. If the employer successfully rebuts the inference of retaliation, the burden of production shifts back to the plaintiff to show that the

defendant's proffered explanation is merely a pretext for impermissible retaliation. *Yartzoff,* 809 F.2d at 1377; *Miller,* 797 F.2d at 731.

Since we are reviewing a retaliatory discharge claim after a full trial, however, the only relevant issue is whether the appellants met their burden of proving that a retaliatory reason more likely than not motivated Fairchild. *See Aikens,* 460 U.S. at 714, 103 S.Ct. at 1481 ("Because this case was fully tried on the merits, it is surprising to find the parties and the Court of Appeals still addressing the question whether Aikens made out a prima facie case. We think that by framing the issue in these terms, they have unnecessarily evaded the ultimate question of discrimination *vel non.*").

5. From 1981 to 1983, 142 employees were laid off; 62 in 1981, 56 in 1982, and 22 in 1983.

6. Fairchild's stated procedure for layoff selection is as follows:

When it is determined that economic circumstances warrant a layoff, the company's staffing needs are determined with regard to matters such as numbers of employees needed, positions to be filled and skills required for those positions. Functional assignments are then made. Those employees to whom the company does not assign a position are laid off.

least skilled employees in their respective positions.

■ Although we recognize that Fairchild presented substantial evidence in support of its explanation for the discharges, we conclude that the district court erred in finding that Miller and Lewis presented "absolutely no evidence of pretext." Moreover, the court erred in directing a defense verdict on the Section 1981 and CFEHA claims based upon finding that no reasonable juror could find retaliation. When the evidence is viewed in the light most favorable to Miller and Lewis, they presented substantial evidence [7] that Fairchild's economic rationale was mere pretext and that Miller and Lewis were more likely laid off in retaliation for filing EEOC complaints. *See Donoghue,* 848 F.2d at 932 (standard for appellate review of directed verdict).

■ First, to determine whether Fairchild's economic rationale was a pretext for retaliation, a jury could consider the timing of appellants' layoffs.[8] Miller was laid off only 59 days after she attended the EEOC fact-finding conference and signed the agreement with Fairchild; Lewis was laid off just 42 days after she signed her agreement. When Lewis was discharged, she had worked under her new supervisor for less than two weeks. A reasonable jury could infer that Lewis and Miller's filing of EEOC charges triggered their subsequent discharge.

■ Second, a jury could infer retaliatory motivation from the evidence that the Fairchild management personnel who participated in the decisions to lay off Lewis and Miller were aware that the appellants had filed EEOC charges, had attended the EEOC fact-finding conference, and were the very people whose actions had prompted the appellants' complaints. Engineering Director Burns decided to lay off Lewis after he consulted with Supervisors Ray and Jones. Burns testified that he was aware of Lewis's discrimination charges, although he had not attended the EEOC fact-finding conference. Supervisor Ray's refusal to allow Lewis to attend training courses had induced Lewis to file her EEOC complaint. Ray attended the fact-finding conference where it was agreed that Lewis would be transferred to a new supervisor (Jones) and allowed to attend training courses. Moreover, Lewis testified to a history of communication problems with Supervisor Ray.

Burns testified that after consulting Ray, he selected Lewis because she was the least skilled and experienced member of the design group, and that Lewis's EEOC charges had no bearing on his decision. Lewis conceded that she was the least skilled designer, but she also testified that she had begun doing more advanced work under her new supervisor. Based on this evidence, a jury could question the credibility of Burns's testimony that Lewis's layoff was solely motivated by a neutral assessment of her skills. To establish retaliation, Lewis is required to show only that the filing of the EEOC complaint was *one of the reasons* for her discharge, and that but for filing the complaint, she would not have been laid off. *See Wrighten v. Metropolitan Hospitals, Inc.,* 726 F.2d 1346, 1354 (9th Cir.1984).

Contracts Director Cassidy and Supervisor Peterson selected Miller as the one contracts administrator to be discharged. Both had attended the EEOC fact-finding conference where Miller's conflicts with Peterson (regarding work space and a deferred pay increase) were discussed. Miller testified that before filing her EEOC complaint, she had repeatedly complained to both Cassidy and Peterson.

---

7. Substantial evidence necessary to defeat a directed verdict is defined as "more than a scintilla of evidence." *Lucas,* 800 F.2d at 850 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

8. The district court concluded that the timing of the layoffs established the causation element of appellants' prima facie case. To show pretext, a plaintiff may rely on evidence offered to establish the prima facie case, as well as on other evidence and effective cross-examination of defense witnesses. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981); *Miller,* 797 F.2d at 732.

At trial, Peterson testified that the layoff of one contracts administrator was necessary because there was a decline in the workload, and that Miller was selected because she was the least experienced employee and the only one unable to administer government contracts.[9] Although Miller admitted she was the least skilled contracts administrator, she also testified that she, as well as the other contracts administrators, had a very heavy workload at the time she was discharged. Based on this evidence, a jury could question whether the layoff of a contracts administrator was economically mandated and conclude that the selection of Lewis was motivated, at least in part, by retaliation.[10]

■ Third, there was evidence that at the same time Miller and Lewis were discharged, four senior employees were transferred to delay or prevent the layoff of less skilled employees. A jury could infer that this procedure was not followed to protect Miller and Lewis because they had filed EEOC complaints. Indeed, Miller testified that when Supervisor Peterson informed her she was being laid off, she reminded him that she had clerical skills and would be willing to be transferred to another position to avoid layoff.

■ Finally, Miller testified that after she learned of the layoff, George Morando, a manager in Fairchild's Engineering Department, told her she should not be surprised that she was discharged after signing the EEOC settlement agreement. Fairchild attempted to discredit this testimony by establishing that Morando resigned from Fairchild two months before he allegedly spoke to Miller because he was dissatisfied with his failure to advance in the company. Although this information could affect the jurors' evaluation of Morando's comment, they might still consider it as a former manager's representation of the attitudes of Fairchild's management.

Appellants' circumstantial evidence that Fairchild's economic rationale is mere pretext is not strong. Nevertheless, based on the evidence presented, a jury could reasonably find that it was not economically necessary to lay off these particular employees, and that Miller and Lewis were specifically selected in retaliation for filing EEOC charges. Although, after weighing the evidence and evaluating witness credibility, the jury might find that Miller and Lewis failed to prove retaliation, the district court erred in directing a defense verdict and precluding the jury from making this determination. *Cf. Yartzoff v. Thomas,* 809 F.2d 1371, 1377–78 (9th Cir.1987) (summary judgment on retaliation claims inappropriate even though plaintiff-employee may not ultimately prevail at trial).

As a summary procedure, a directed verdict should be used judiciously, particularly in cases involving issues of motivation or intent. *Douglas v. Anderson,* 656 F.2d 528, 535 (9th Cir.1981). An employee's claim of retaliatory discharge requires a determination of an employer's true motivation, an elusive factual question which is difficult to ascertain and generally unsuitable for summary disposition. *See Miller,* 797 F.2d at 732–33; *Lowe,* 775 F.2d at 1008, 784 F.2d at 1407. A directed verdict is improper when there is conflicting testimony raising a question of witness credibility. *See Donoghue,* 848 F.2d at 932. Here, determining Fairchild's true reasons for discharging the appellants requires an evaluation of the credibility of the company managers who testified that they selected Miller and Lewis solely because of their lack of skills.

■ We conclude that the district court erred in directing a defense verdict on the Section 1981 and the CFEHA claims; we reverse and remand for a new trial on those causes of action. We also vacate the

---

**9.** Peterson testified, however, that if another contracts administrator had left voluntarily, he could have kept Miller on and trained her to administer government contracts.

**10.** At least one Fairchild director was initially suspicious of Peterson's choice. Finance Director Brucker testified that when Peterson and Cassidy informed him that they had selected Miller for layoff, he told them it was a controversial decision and questioned them carefully to assure that the decision was based on her comparative lack of skills.

Title VII judgment and remand for a new trial on the appellants' Title VII claim. The Second, Third, Fifth, Seventh, Eighth, and Eleventh Circuits have held that, where an employee brings an equitable discrimination claim (e.g., Title VII) and a legal discrimination claim (e.g., § 1981) against an employer based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations in deciding the legal claim. *See, e.g., Roebuck v. Drexel University*, 852 F.2d 715, 737 (3d Cir. 1988) ("with one possible exception, every circuit to have ruled on the issue has held that the jury's findings on a § 1981 claim are binding on the trial judge's resolution of a concurrently tried Title VII claim."); *Volk v. Coler*, 845 F.2d 1422, 1438 (7th Cir.1988) ("because the district court would have been bound by the jury's verdict on related issues, unless it set the jury verdict aside, and our decision reverses the §§ 1983 and 1985(3) claims, the judgment entered on all of the plaintiff's Title VII claims must also be reversed."); *Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 954–55 (2d Cir.1988); *Ward v. Texas Employment Commission*, 823 F.2d 907, 908–09 (5th Cir.1987); *Garza v. City of Omaha*, 814 F.2d 553, 557 (8th Cir.1987); *Lincoln v. Board of Regents*, 697 F.2d 928, 934 (11th Cir.1983). *See also Bouchet v. National Urban League, Inc.*, 730 F.2d 799, 803–04(D.D.C.1984) (then-circuit Judge Scalia observed that if the plaintiff, whose Title VII claim had been rejected by the district court after trial, were allowed to add common-law tort claims to her Title VII claims, then "[n]ot only would a jury trial on her tort claims be required, but the Title VII judgment—even if otherwise valid—would have to be vacated, and the whole case retried, giving preclusive effect to all findings of fact by the jury."). We view these holdings as consistent with Su-

preme Court precedent and the respect that properly is accorded to a jury verdict in our system of jurisprudence. *See Tull v. United States*, 481 U.S. 412, 425, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987) (citation omitted) (where there are "separate and distinct statutory provision[s]," one of which authorizes legal relief and one of which authorizes equitable relief, "if a 'legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'"); *but see Lytle v. Household Manufacturing Co.*, 831 F.2d 1057 (4th Cir.1987) (unpublished disposition holding that a "district court's findings in [a] Title VII trial collaterally estop [a plaintiff] from relitigating these findings before a jury"), *cert. granted*, — U.S. —, 109 S.Ct. 3239, 106 L.Ed.2d 587 (1989). Accordingly, we hold that, on remand, the district court in deciding the Title VII claim will be bound by all factual determinations made by the jury in deciding the Section 1981 and CFE-HA claims.

## III. BREACH OF CONTRACT

Miller and Lewis allege that by discharging them within two months after they negotiated the EEOC settlement agreements, Fairchild breached an implied term of the agreements that guaranteed Miller and Lewis continued employment for a reasonable period that would allow them to enjoy the benefits of Fairchild's promises.[11]

Under California law,[12] a contract must be interpreted to effectuate the mutual intention of the parties at the time of contracting, so far as that intention is ascertainable and lawful. Cal.Civil Code § 1636 (West 1985); *Jacobs v. Freeman*, 104 Cal. App.3d 177, 188, 163 Cal.Rptr. 680, 686 (1980). The existence of an implied contract or contractual term thus turns on the

---

**11.** Neither agreement expressly guaranteed Miller or Lewis continuing employment for any time period. Each agreement included a clause stating that the agreement constituted "the complete understanding" between the parties and the EEOC, and that "[n]o other promises or agreements shall be binding unless signed by these parties."

**12.** In construing the settlement agreements at issue in this case, we apply principles of California contract law. *See Miller*, 797 F.2d at 733; *Ferguson v. Flying Tiger Line, Inc.*, 688 F.2d 1320, 1322 (9th Cir.1982).

intent of the parties. " '[I]t must be determined, as a question of fact, whether the parties acted in such a manner as to provide the necessary foundation for [an implied contract], and evidence may be introduced to rebut the inference and show that there is another explanation for the conduct.' " *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 223, 765 P.2d 373, 385, (1988) (quoting *Silva v. Providence Hosp. of Oakland*, 14 Cal.2d 762, 764, 97 P.2d 798 (1939)).

■ To ascertain the parties' intent, the district court properly admitted extrinsic evidence regarding the circumstances surrounding the agreements' formation. *See* Cal.Civil Code § 1647 (West 1985); *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975); *Miller*, 797 F.2d at 734–35; *Western Camps, Inc. v. Riverway Ranch Enterprises*, 70 Cal.App.3d 714, 722–23, 138 Cal.Rptr. 918, 923 (1977). However, the district court erroneously concluded that jurors could not reasonably infer from this evidence that the parties intended Fairchild to provide continued employment for a reasonable period.[13]

■ Both women testified that a purpose of the settlement agreements was to enable them to improve their performance at Fairchild. Lewis and Miller relinquished valuable rights to file Title VII discrimination lawsuits against Fairchild in exchange for Fairchild's promise to provide them training which they needed in order to improve their skills and to advance in the company.

A reasonable jury could find that Fairchild could not have meaningfully discharged this obligation unless Lewis and Miller remained employed for a reasonable period.[14] *See Marin County v. Assessment Appeals Bd.*, 64 Cal.App.3d 319, 328, 134 Cal.Rptr. 349, 355 (1976) (rejecting interpretation of contract whereby one party remains bound by contractual restrictions but is simultaneously deprived of the benefits of the bargain).

Both Lewis and Miller admitted that at the time of the EEOC conferences, they were aware of ongoing layoffs at Fairchild and were not explicitly promised layoff protection. However, both women testified that they did not ask for such protection at their conferences because they did not feel personally threatened by potential discharge.[15] Moreover, both women testified they believed the settlement agreements implicitly guaranteed them layoff protection.

A jury should evaluate the credibility of the appellants' assertions. *See Donoghue*, 848 F.2d at 932 (directed verdict improper when conflicting testimony raises a question of witness credibility). Based on the extrinsic evidence, viewed in the light most favorable to the appellants, a jury could reasonably find that the parties intended an implied covenant of continued employment. Thus, the district court erred in directing a verdict on the breach of contract claim. *See id.*

---

**13.** The district court's findings regarding the parties' intent, based on extrinsic evidence, are reviewable as findings of fact. *See Miller*, 758 F.2d at 367. We review the grant of a directed verdict to determine whether the jurors could have reasonably found in the appellants' favor. *See Donoghue*, 848 F.2d at 932.

**14.** Although we need not define the outer limits of such a reasonable period, we conclude that a reasonable jury could find that it is longer than two months.

Because Lewis and Miller were laid off within two months of signing their agreements, a jury could find they did not fully receive the promised benefits. Lewis actually worked under her new supervisor for less than two weeks. She began the Cad/Cam training course before she was discharged and was able to continue for

four months after her layoff. However, she was informed that she was ineligible to complete the 32 week course because she was no longer employed by Fairchild, and she was precluded from attending subsequent courses. Miller received her deferred merit increase for only one month before her discharge and never attended training courses.

**15.** Lewis testified that just prior to the EEOC conference, Fairchild's Director of Administration and Security, Bob Friend, assured her that she would not be laid off. Friend disputed this and testified that he had no authority to make such a promise. Miller testified that she felt secure at Fairchild because of her heavy workload, transferable skills and support within the company.

## IV. TORTIOUS BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Lewis and Miller allege that their retaliatory discharge within two months after negotiating the EEOC settlement agreements constituted a tortious breach of the implied covenant of good faith and fair dealing.

■ We affirm the district court's directed verdict on the appellants' claim for tortious breach of the implied covenant of good faith and fair dealing. Under California law, "tort remedies are not available for breach of the implied covenant [of good faith and fair dealing] in an employment contract to employees who allege that they have been discharged in violation of the covenant." *Foley v. Interactive Data Corps*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 239, 765 P.2d 373, 401 (1988). Although *Foley* was decided while this case was pending appeal, we follow *Foley* because "[a]bsent manifest injustice ... we generally apply the law as it exists when we render our decision." *Rubin v. Belo Broadcasting Corp.*, 769 F.2d 611, 614 (9th Cir.1985).

## V. FRAUD

Lewis and Miller allege that Fairchild fraudulently induced them to enter into the settlement agreements by concealing the fact that they were probable candidates for a future layoff and by making promises which Fairchild had no intention of performing.

To establish actual fraud under California law, the plaintiff must show that the defendant, with intent to deceive or induce the plaintiff to enter into a contract, (1) misrepresented a material fact, (2) suppressed facts it knew or believed to be true, or (3) made a promise intending not to perform it. *See* Cal.Civil Code § 1572 (West 1982); *Miller*, 797 F.2d at 738 (applying California law). *Scofield v. State Bar*, 62 Cal.2d 624, 628, 401 P.2d 217, 219, 43 Cal.Rptr. 825, 827 (1965); *Jacobs*, 104 Cal. App.3d at 192, 163 Cal.Rptr. 680.

■ Miller and Lewis presented evidence that when the parties negotiated the settlement agreements, Fairchild concealed the fact that Miller and Lewis would likely be laid off in the near future. The managers who represented Fairchild at the EEOC settlement conferences testified that when they attended the conferences in September 1982, they were aware of the company's ongoing economic decline and potential imminent layoffs, but did not specifically know that Miller and Lewis would be laid off in November. Ralph Bache, who attended both conferences as Fairchild's Personnel Director, admitted he knew there could be layoffs later that year when he signed both agreements on Fairchild's behalf, but did not inform Miller or Lewis of the potential layoffs.[16]

The Fairchild representatives also knew that Fairchild selected employees for layoff based on a comparative skills assessment and that Miller and Lewis were the least skilled individuals in their respective positions. A jury could reasonably infer, based on this information, that the managers knew or believed that Miller and Lewis were likely layoff candidates, and intentionally concealed this information at the settlement conferences.

The subsequent failure to perform a promise warrants an inference that the promisor did not intend to perform. *See Rambo v. Blain*, 263 Cal.App.2d 158, 163, 69 Cal.Rptr. 132, 135 (1968); *Boyd v. Bevilacqua*, 247 Cal.App.2d 272, 292, 55 Cal. Rptr. 610, 623–24 (1966). Here, Fairchild did not provide Miller and Lewis with promised training opportunities because it discharged them within two months after negotiating the agreements. This subsequent conduct coupled with the other evidence presented by Miller and Lewis could support a finding that Fairchild did not intend to perform its promises when it signed the agreements. *See Boyd*, 247 Cal. App.2d at 292, 55 Cal.Rptr. 610; *Tenzer v.*

---

**16.** Bache testified that at the end of Lewis's conference, he and Supervisor Ray told the EEOC representative that they might be back at the EEOC because of potential layoffs. Lewis was not present during this conversation.

*Superscope, Inc.,* 39 Cal.3d 18, 216 Cal. Rptr. 130, 137 (1985).

Actual fraud is a question of fact involving determinations of intent and evaluations of credibility properly resolved by the jury. *See* Cal.Civil Code § 1574; *Jacobs,* 104 Cal.App.3d at 192, 163 Cal.Rptr. 680. Here, because jurors could have reasonably inferred that Fairchild fraudulently induced Miller and Lewis to enter into the settlement agreements, the district court erred in directing a verdict on appellants' fraud claim. *See Donoghue,* 848 F.2d at 932.

## VI. EMOTIONAL DISTRESS

■ The district court dismissed the appellants' claims for intentional and negligent infliction of emotional distress, reasoning that they are precluded by California Worker's Compensation Act, Labor Code § 3600 et seq. (WCA). The latest California Supreme Court case on this issue is *Cole v. Fair Oaks Fire Protection Dist.,* 43 Cal.3d 148, 233 Cal.Rptr. 308, 729 P.2d 743 (1987). In *Cole,* the court held that the WCA precludes civil suits only "when the essence of the wrong is personal physical injury or death." 233 Cal.Rptr. at 315, 729 P.2d at 750. The court reasoned that, since only physical injuries are compensable under the WCA, "unless an action were permitted in cases where there was no physical injury or disability, the employee would be left without any remedy whatsoever...." 233 Cal.Rptr. at 312, 729 P.2d at 747 (citation omitted). Since the appellants do not claim that any physical injuries or disabilities resulted from Fairchild's alleged misconduct, *Cole* establishes that their emotional distress claims are not precluded by the WCA.

Fairchild relies on the California Court of Appeals decision in *Hart v. National Mortgage & Land Co.,* 189 Cal.App.3d 1420, 235 Cal.Rptr. 68 (1987). In *Hart,* the court announced that "the time should and has

come to cast aside the ... 'physical versus emotional harm' approach in favor of another factor more logically connected to the workers compensation or suit-at-law choice. That factor is whether the acts complained of were a 'normal part of the employment relationship', or, whether the acts were incidents of the employment relationship." 235 Cal.Rptr. at 73 (citations omitted). Whatever the merit of this position, it is clear that the Court of Appeals in *Hart* lacked the authority to modify the test enunciated by the California Supreme Court in *Cole.*[17] In any event, the alleged misconduct in this case is certainly not a "normal part of the employment relationship." Miller and Lewis contend that they suffered emotional distress as a result of being laid off following settlement negotiations concerning their complaints of racial discrimination. In our view, this is not a "normal" pattern of events in the workplace, and no California court has characterized it as such. On the contrary, the court in *Hart* indicated that the California courts do not broadly construe the term a "normal part of the employment relationship." *See Hart,* 235 Cal.Rptr. at 74 ("there can be little doubt" that sexual harassment by a manager toward a lower level employee is not "a normal part of employment").

## VII. PUNITIVE DAMAGES

■ Miller and Lewis contend that the district court erred in dismissing their claim for punitive damages for breach of contract and for the negligent infliction of emotional distress.[18] The district court's ruling was correct with respect to the breach of contract claim. California law does not permit punitive damages for breach of contract. Section 3294(a) of the California Civil Code expressly provides that punitive damages are recoverable only for actions "not arising from contract."

---

**17.** In *Cole,* the court held that whether the acts complained of were "a normal part of the employment relationship" is relevant in determining the availability of a civil suit only where the employee suffered *both* physical injury and emotional distress. *Cole,* 233 Cal.Rptr. at 315, 729 P.2d at 749.

**18.** Miller and Lewis also seek punitive damages in their Section 1981, California Fair Employment and Housing Act and fraud counts.

*See also Sawyer v. Bank of America,* 83 Cal.App.3d 135, 145 Cal.Rptr. 623, 626 (1978) ("the only supportable theory of liability was for breach of contract.... Hence, the award of punitive damages cannot be sustained").

■ The district court erred in dismissing the appellants' punitive damages claim for the negligent infliction of emotional distress. In our previous opinion in this case, we noted that Miller's and Lewis's negligent infliction of emotional distress claim "[p]resumably ... does not refer to Fairchild's asserted retaliatory discharge [but rather to] Fairchild's act of negotiating settlement agreements and then laying off [Miller and Lewis] prior to their enjoyment of benefits implied under the contract." *Miller,* 797 F.2d at 738. Miller's and Lewis's negligent infliction of emotional distress count clearly could be read as alleging that Fairchild consciously disregarded their contract rights when it laid them off. This count alleged (by incorporation) that Fairchild's acts were "willful, wanton, malicious and oppressive." Under California law, a defendant's "conscious disregard" of a plaintiff's rights justifies the award of punitive damages. *See* California Civil Code §§ 3294(a) and 3294(c) (punitive damages may be awarded where the defendant acted with "malice"; malicious conduct includes "conduct which is carried on by the defendant with conscious disregard of the rights or safety of others"). *See also Petersen v. Superior Court,* 31 Cal.3d 147, 181 Cal.Rptr. 784, 791, 642 P.2d 1305, 1312 (1982) ("the law in California ha[s] evolved in the area of punitive damages to the point where a finding of defendant's conscious disregard of the safety or rights of others w[ill] support an award of punitive damages"); *Silberg v. California Life Insurance Co.,* 11 Cal.3d 452, 113 Cal.Rptr. 711, 718, 521 P.2d 1103, 1110, (1974) ("to justify an award of exemplary damages, the defendant must ... act ... with conscious disregard of the plaintiff's rights"); *Roth v. Shell Oil Co.,* 185 Cal.App.2d 676, 8 Cal.Rptr. 514, 517–18 (1960) (in determining whether to uphold a punitive damage award, "[t]he only question is whether or not a jury might rightful-

ly [have] dr[awn] an inference from the evidence produced that there was a conscious disregard for the rights of others which constituted an act of subjecting plaintiffs to cruel and unjust hardship").

## VIII. BIFURCATION, PAROL EVIDENCE, AND EVIDENTIARY RULINGS

### A. *Bifurcation*

■ Miller and Lewis argue that the district court erred in bifurcating the trial of Fairchild's liability and damages. We suggest that the district court on remand reconsider its view that the possible savings in time justifies bifurcation in this case. The district court decided to bifurcate the trial after it had erroneously ruled that the emotional distress claims were precluded. On remand, Miller and Lewis's emotional distress claims presumably will be tried on their merits. In an intentional infliction of emotional distress claim, the issue of liability is intertwined with the issue of damages since the trier of fact can find liability only if it first finds that the plaintiff suffered severe emotional distress. *See Wallis v. Superior Court,* 160 Cal. App.3d 1109, 207 Cal.Rptr. 123, 130 (1984) (outlining requirements for an intentional infliction of emotional distress action). Similarly, a finding of liability for negligent infliction of emotional distress is predicated on a finding of "serious emotional distress." *Molien v. Kaiser Foundation Hospitals,* 27 Cal.3d 916, 167 Cal.Rptr. 831, 839, 616 P.2d 813, 821, (1980) (en banc). An attempt to separate the trial of the liability and damages issues in this case would therefore tend to create "confusion and uncertainty." *Compare United Air Lines, Inc. v. Wiener,* 286 F.2d 302, 304 (9th Cir.1961) (bifurcation is improper where "[t]he question of damages is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty").

### B. *Parol Evidence*

■ Miller and Lewis argue that the district court erred in granting Fairchild's

motion to exclude parol evidence. The district court recognized that "evidence of the surrounding circumstances [is] admissible to interpret the contract." The court ruled that "what is inadmissible will be any statement that there is some side agreement or some side understanding other than that mentioned in the contract." This ruling is consistent with established principles of California contract law. Both the agreement between Miller and Fairchild and the agreement between Lewis and Fairchild stated that "[t]his agreement constitutes the complete understanding [between the parties to the agreement]. No other promises or agreements shall be binding unless signed by these parties." Miller and Lewis do not argue that they misunderstood or were unaware of this language. Under these circumstances, it is reasonable to conclude that in both Miller's and Lewis's cases "the parties to [the] written agreement have agreed to it as an 'integration' —a complete and final embodiment of the terms of [the] agreement—[and] parol evidence [therefore] cannot be used to add to or vary its terms." *Marani v. Jackson,* 183 Cal.App.3d 695, 702, 228 Cal.Rptr. 518, 521 (1986) (citations omitted).

### C. *Exclusion of Lay Witnesses' Testimony*

■ The district court ruled that the testimony of four of Miller's and Lewis's relatives was irrelevant during the liability phase of the trial because it concerned only the emotional distress Miller and Lewis allegedly suffered as a result of Fairchild's actions. Since proof of the existence of distress is critical to the determination of Fairchild's liability for negligent and intentional infliction of emotional distress, the district court on remand should not exclude this evidence at the liability phase, whether or not it again chooses to bifurcate the trial of the liability and damages issues.

### D. *Exclusion of Expert Testimony*

■ Miller and Lewis contend that the district court erred in excluding the expert testimony of James W. Potts. Miller and Lewis apparently did not satisfy Local Rule 9.4.6's requirement of an exchange of a short narrative statement of the testimony expected to be elicited at trial, providing the defendant and the court only with the conclusory statements that the testimony would concern "[r]ecommended personnel policies and procedures for California employers faced with reduction of staff" and would conclude that "[d]efendant's termination of plaintiffs was improper and unreasonable under the circumstances." Miller and Lewis provided no explanation of their failure to comply with Local Rule 9.4.6, and did not offer to comply when the district court heard the motion. Under these circumstances, the district court did not abuse its discretion in excluding the testimony in response to the appellants' noncompliance. *See Sealy, Inc. v. Easy Living, Inc.,* 743 F.2d 1378, 1382–83 (9th Cir.1984) ("the district court may, in its discretion, exclude expert witnesses not disclosed in pretrial as required by local rules"); *Wirtz v. Hooper Homes Bureau, Inc.,* 327 F.2d 939, (5th Cir.1964) (same). *See also Jenkins v. Whittaker Corp.,* 785 F.2d 720, 728 (9th Cir.1986) ("The trial court properly exercised its discretion in excluding [an] expert['s] testimony … because [the defendant] gave the plaintiffs no advance notice of the fact and substance of his expert testimony and therefore no opportunity to prepare to meet it").

The district court also excluded Potts's testimony because it concluded that this evidence would not be useful to the jury in deciding whether Fairchild terminated the appellants in retaliation for their complaints about racial discrimination.

■ Since the district court earlier had dismissed the negligent infliction of emotional distress claims, it did not consider whether testimony about California employers' procedures regarding layoffs might be relevant in deciding whether Fairchild was negligent in laying Miller and Lewis off despite its alleged implied contractual obligations to them. In a negligent infliction of emotional distress case, industry custom or practice is relevant in determining the defendant's duty of care. *See Bullis v. Security Pacific National*

*Bank,* 21 Cal.3d 801, 148 Cal.Rptr. 22, 25, 582 P.2d 109, 112 (1978) (under California law, "the custom in the community ... is evidence to be considered in determining the proper standard of care"); 6 Witkin, *Summary of California Law,* § 754, at 93 (9th ed. 1988).

### E. *Exclusion of Evidence of Hirings and Admission of Evidence of Layoffs*

Miller and Lewis challenge the district court's exclusion of evidence of hirings made by Fairchild after they were laid off. They also challenge the district court's admission of Fairchild's evidence of layoffs both proceeding and following their layoffs.

■ The district court found that the appellants' evidence of hirings following their layoffs was admissible only with respect to "persons that [were] hired to perform tasks that the [appellants] were qualified to perform." The district court expressed concern that the jury might conclude from other evidence of hirings that "Fairchild has a lot of money and they could hire these other people, they didn't have to let your people go." Nonetheless, the district court admitted Fairchild's evidence of layoffs in job categories *other than* those of the appellants which were made after the appellants' layoffs. The district court did not explain the relevance of such evidence,[19] but Fairchild concedes that it was presented to show "Fairchild's economic condition." If this evidence of "unrelated" layoffs was admissible in order to show that Fairchild's economic position was such that it was forced to reduce its workforce, we do not see why evidence of "unrelated" hirings should not be admissible to support the opposite suggestion about Fairchild's economic condition. Thus, we conclude that the district court abused its discretion in excluding the appellants' evidence of hirings. However, since evidence of unrelated hirings provides relatively weak support for the appellants' ar-

gument that Fairchild's economic condition was a mere pretext for their layoffs, we conclude that this exclusion was not sufficiently prejudicial to warrant reversal of the Title VII dismissal. *See Coursen v. A.H. Robins Co., Inc.,* 764 F.2d 1329, 1333 (9th Cir.1985) (evidentiary errors will not be reversed "absent some resulting prejudice"); *Hill v. Rolleri,* 615 F.2d 886, 890 (9th Cir.1980) (erroneous evidentiary ruling does not justify reversal if it did not have a "substantial" effect on any of the parties).

### F. *Exclusion of Comments on "Statistical Significance"*

■ The district court ruled that Miller and Lewis could not argue the "statistical significance" of the fact that they were the only blacks in their respective departments, that they were the only employees with settlement agreements with the EEOC, and that they were laid off on the same day. The district court, however, ruled that Miller and Lewis could "bring [these facts] out and argue whatever [they] think the inferences are." Since the district court permitted Miller and Lewis to offer and argue this evidence, we do not find that they were in any way prejudiced by the mere exclusion of commentary as to "statistical significance."

### G. *Exclusion of Termination Clearance Form*

■ Miller and Lewis argue that the district court erred in admitting Exhibit 137 into evidence over their hearsay and foundation objections. Exhibit 137 is a termination clearance document. Fairchild apparently prepares a termination clearance document whenever an employee turns in his security badge. The appellants contend that the district court relied on Exhibit 137 to discredit Miller's testimony that a manager told her that she should expect to be laid off because she signed the EEOC settlement agreement. Miller and Lewis concede that Exhibit 137 might fall under Fed. R.Evid. 803(6)'s business document excep-

---

**19.** The district court explained that evidence of layoffs in unrelated job categories *before* the appellants' layoffs was relevant because "the longer layoffs were taking place ... the more likely the [appellants] would have known about it, and that is one of the possible issues of the case."

tion to hearsay, but argue that this exception's "foundation" requirement was not met in this case. Fed.R.Evid. 803(6) requires that a qualified person testify that it is the practice of the business to make the record and that the record is kept in the course of regularly conducted business activity. Miller and Lewis argue that Jack Brucker is not "a qualified person" within the meaning of Rule 803(6). Brucker testified that he is Fairchild's Chief Financial Officer and exercises supervisory authority over the payroll department. He also testified that the termination clearance document at issue was prepared by the personnel department and signed by the Department of Finance, of which he was in charge. His testimony demonstrates that he is qualified within the meaning of Rule 803(6). The foundation requirement for Rule 803(6) "may be satisfied by the testimony of anyone who is familiar with the manner in which the document was prepared, even if he lacks firsthand knowledge of the matter reported, and even if he did not himself either prepare the record or even observe its preparation." 4 Louisell and Mueller, *Federal Evidence*, § 446, at 663–64 (1979) (footnotes omitted). Indeed, we have previously noted that " '[i]t is not [even] necessary that a sponsoring witness be employed by the business at the time of the making of each record.... [O]bjections, relating to the identity or competency of the actual preparer, may [be] relevant to the evidentiary weight or credibility of the documents, but [do] not [affect] their admissibility.' " *United States v. Smith*, 609 F.2d 1294, 1302 (9th Cir.1979) (quoting *United States v. Evans*, 572 F.2d 455, 490 (5th Cir.1978)).

### H. *Sustaining the Objection to a Question to Brucker*

 Mitchell and Lewis argue that the district court erred in sustaining Fairchild's objection to the following question posed to Jack Brucker, "Did you give [Miller's] concerns as much consideration as Fairchild's at the time you decided that it was okay to go ahead and weather the controversy and lay her off? " The court sustained the objection on relevance. While the nature

and extent of Fairchild's attention to Miller's "concerns" might be relevant to issues in the suit, Miller and Lewis have not shown the district court abused its discretion under Rule 401 when it concluded that the precise question of whether Fairchild gave its own and Miller's concerns *equal* consideration is irrelevant. *See generally* Cleary, ed., *McCormick on Evidence*, at 546–47 (1984) (with respect to relevance, "[w]ise judges may come to differing conclusions in similar situations.... Accordingly, much leeway is given to trial judges").

### I. *Fairchild's Use of Leading Questions in its Examination of Jack Brucker*

 Miller and Lewis contend that Fairchild improperly developed Jack Brucker's testimony through leading questions. After Brucker testified about relatively complex inventory practices, Fairchild's attorney in effect led Brucker through an extended hypothetical concerning these practices. During this portion of his testimony, Brucker did little more than repeatedly respond "right." The district court overruled Miller's and Lewis's objection at trial. It is not entirely clear that Fairchild's leading questions were necessary to develop Brucker's testimony. *See* Fed.R.Evid. 611(c) ("Leading questions should not be used on direct examination of a witness except as may be necessary to develop his testimony"); 3 Louisell and Mueller, *Federal Evidence* § 339, at 462–63 (1979) (Rule 611(c)'s "necessity" exception applies where a witness is very young, timid, ignorant, unresponsive, or infirm). However, Rule 611(c) vests broad discretion in trial courts, and we will therefore reverse on the basis of improper leading questions only if "the judge's action ... amounted to, or contributed to, the denial of a fair trial." Cleary, ed., *McCormick on Evidence*, at 12 (1984) (footnote omitted). *See also United States v. Tsui*, 646 F.2d 365, 369 (9th Cir.1981); *United States v. DeFiore*, 720 F.2d 757, 764 (2d Cir.1983) (" '[a]n almost total unwillingness to reverse for infractions [of the rule against leading questions] has been manifested by appellate courts' ")

(quoting Advisory Committee Note to Rule 611). Reversal on this basis would be inappropriate here because the testimony elicited through leading questions did not substantially expand or alter earlier testimony elicited through proper, non-leading questions.

### IX. CONCLUSION

We affirm the directed verdict on the claim for tortious breach of the implied covenant of good faith and fair dealing. We reverse the dismissal of the Title VII claim and the emotional distress claims and the directed verdict on the breach of contract, fraud. Section 1981 and CFEHA claims. We remand for a new trial.

California Employment Law Council's motion to file an amicus brief is granted.

AFFIRMED in part, REVERSED in part, and REMANDED.