**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-30109 |
| Plaintiff-Appellee, | D.C. No. CR 15-40-M-DLC |
| v. | |
| GEORGE LESLIE MANLOVE, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted October 10, 2018
Seattle, Washington

Before: FERNANDEZ, N.R. SMITH and CHRISTEN, Circuit Judges.

Manlove appeals his conviction following a jury trial, arguing that the government's use of leading questions during its direct examination of Paul Nisbet, Manlove's alleged co-conspirator, denied Manlove a fair trial. We affirm.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1. At trial, Manlove objected to two leading questions, that were directed toward preliminary, background matters, and/or "did not substantially expand or alter earlier testimony elicited through proper, non-leading questions." *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 515 (9th Cir. 1989) (as amended Sept. 19, 1989); *see also* Fed. R. Evid. 611(c) (leading questions may be used on direct examination "as necessary to develop the witness's testimony"). Even though the district court did not rely on this basis when it overruled these objections, we may "affirm on any basis in the record," *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999), and do so here. The district court did not abuse its discretion when it overruled these two objections.

2. By not objecting to any other leading questions by the prosecutor on direct examination, Manlove forfeited his leading-question argument regarding the remainder of the prosecutor's questions. We therefore review his challenge on appeal to those questions for plain error. *United States v. $11,500.00 in United States Currency*, 869 F.3d 1062, 1075 (9th Cir. 2017); *see also United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc). The district court did not err – plainly or otherwise – when it allowed those questions.

3. The government disclosed prior to trial that it intended to call Nisbet and treat him as an adverse party or witness. *See* Fed. R. Evid. 611(c)(2) (leading

2

questions permitted on direct examination when "a party calls a hostile witness, an adverse party, or a witness identified with an adverse party"). Manlove did not object to this pretrial proposal when it was disclosed, nor did he specifically object to it at any time when Nisbet was called to testify or was testifying. Instead, Manlove raised the two leading-question objections discussed above. When the district court overruled the second of those two objections, it stated that it was assuming that Nisbet was being treated as an adverse witness, and that the leading question was therefore appropriate. However, by stating that it was merely assuming that Nisbet was being treated as an adverse witness, the district court signaled that its ruling was tentative and was open to further objection or argument. *Cf.* Fed. R. Evid. 103(b) ("Once the court rules definitively on the record — either before or at trial — a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). Manlove had ample opportunity to object to that finding then or at any point thereafter while Nisbet was testifying, but didn't. Manlove thereby forfeited his objection to the district court's adverse witness finding. *See $11,500.00 in United States Currency*, 869 F.3d at 1075. Manlove hasn't shown that it was error to grant the government's unopposed

request for such a finding, or that the district court's decision to do so satisfies any of the other elements of the plain error test. *Id.*[1]

**AFFIRMED.**

---

[1] Because Judge Christen only agrees that prongs (3) and (4) of the plain error test have been met here, her concurrence suggests that the district court erred because it failed to halt the prosecution's use of leading questions at some point during the prosecutor's questioning of Nisbet. However, other than the two objections discussed in our decision, no other objections to leading questions were ever raised during trial. Further, no objection was ever raised to the state's designation of Nisbet as an adverse witness, either before or during trial. No one identifies a case holding that a district court must reconsider or revisit an adverse party designation *sua sponte*, nor are we aware of any. The district court did not err when it failed to raise this issue on its own motion or otherwise try Manlove's case for him.

FILED

NOV 14 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FERNANDEZ, Circuit Judge, concurring:

I concur in the lead disposition without reservation.  Still, I agree with Judge Christen that "caution is warranted" before the jury-trial praxis evidenced here is emulated.

*United States v. Manlove*, No. 17-30109

CHRISTEN, Circuit Judge, concurring in the judgment:

Because overwhelming evidence supported the jury's verdict, I join the court's decision affirming Manlove's conviction. Even if Manlove properly preserved his argument that the government impermissibly led its star witness, a new trial is not warranted where there is ample evidence of guilt. *See United States v. Archdale*, 229 F.3d 861, 865 (9th Cir. 2000); *see also United States v. Castro-Romero*, 964 F.2d 942, 944 (9th Cir. 1992) ("even if the leading questions had been improper, they would not have resulted in denial of a fair trial because of the evidence that Castro-Romero admitted to the crime"). I write separately to address the government's extensive use of leading questions in its direct examination of a key witness.

Manlove was the Chief Executive Officer of Vann's, Inc., an electronics retailer in Montana. Nisbet, the witness in question, was Vann's Chief Financial Officer. After Vann's board hired Manlove as CEO in 2006, Nisbet worked closely with him up until Manlove was indicted in 2016. Nisbet admitted to playing an instrumental role in the financial schemes that bankrupted the company and destroyed the value of Vann's employee stock option retirement program. Originally indicted as Manlove's co-defendant, Nisbet entered a guilty plea and agreed to testify at Manlove's trial.

The government characterized Nisbet as an "adverse" witness in the pre-trial phase of Manlove's case, but by the time Manlove's trial began, Nisbet was the beneficiary of a plea agreement that required his on-going cooperation. He was also eligible for a further sentence reduction if his trial testimony substantially assisted the government. In short, Nisbet had every incentive to cooperate with the government and even a cursory review of his trial testimony vividly illustrates that he did. Nisbet's direct examination lasted approximately three hours and forty-five minutes. In that time, the government asked him more than five hundred questions and, by rough count, 494 were "yes/no" questions or questions that suggested their own answer. Page after page of the transcript shows that the prosecutor asked questions by making declarative statements followed by "correct?" or "fair to say?" or "right?" Nisbet's answers were usually monosyllabic.

In cases where a witness is not "an adverse party, or a witness identified with an adverse party," or openly hostile to the party calling him, the Federal Rules of Evidence generally limit the use of leading questions to those "necessary to develop the witness's testimony." Fed. R. Evid. 611(c). To be sure, we have approved the use of leading questions to develop areas apart from preliminary, uncontested, or background facts, but the circumstances in those cases were readily distinguishable from the Manlove's trial.

2

For example, in *United States v. Archdale*, the government's witness was a twelve-year old sexual assault survivor who demonstrated marked difficulty relating traumatic events on the witness stand. 229 F.3d at 866; *see also Castro-Romero*, 964 F.2d at 943 (affirming use of leading questions on direct examination of an eight-year old survivor of sexual assault). *Miller v. Fairchild Industries*, 885 F.2d 498, 514 (9th Cir. 1989), provides another example. There, a witness was led through particularly confusing testimony after already answering non-leading questions concerning the same subject. *See also United States v. McLaurin*, 107 F.3d 18, *2 (9th Cir. 1997) (table) (citing *Miller* for same proposition). Other recognized exceptions to the general prohibition on leading questions arise when witnesses are non-native English speakers, or are hesitant or timid, or when questions relate to information not seriously contested. *See* 1 *McCormick on Evidence* § 6 (7th ed. 2016) (collecting cases).

None of these well-established exceptions applied to Nisbet's direct examination. He was an adult witnesses who spoke perfect English and who did not demonstrate any timidity, confusion, or hostility. The government's stated justifications for leading him—"streamlining its case in chief" and "shortening trial"—do not justify entirely jettisoning our general prohibition on leading witnesses. The extensive use of leading questions is particularly problematic

3

where, as here, a witness is led through a virtually uninterrupted series of substantive questions going to essential elements of a charged offense.  *See, e.g.,* Edward J. Imwinkelreid, *Evidentiary Foundations* 3 (1986) (explaining that leading questions going to essential elements of a cause of action are particularly dangerous because there "is a serious risk that the witness . . . will simply follow the attorney's lead rather than attempting to give the most accurate testimony.").  The government's use of leading questions in Nisbet's direct examination satisfies at least the first two parts of our test for plain error.[1]  I join in today's opinion because at least the third part of the test, which asks whether an error affected the outcome of the district court proceedings, remains unsatisfied.[2]

During oral argument before our court, the government took the position that it may "lead forever" once a witness is deemed adverse.  But the government must

---

[1]     "[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks and alterations omitted).

[2]     Extensive leading questions risk undermining the public's sense of integrity and fairness of judicial proceedings, potentially satisfying the final prong of our plain error test.

take seriously its "obligation to serve the cause of justice[,]" *United States v. Agurs*, 427 U.S. 97, 111 (1976), regardless of whether defense counsel objects, and the transcript of this direct examination shows that it was the prosecutor who was testifying, not Nisbet.[3]

The government does not dispute that Nisbet's direct examination comprised almost entirely of leading questions. It argues that Nisbet's testimony was a cumulative narrative offered to stitch together a coherent picture of Manlove's complex conspiracy from evidence showing scores of individual fraudulent transactions. This explanation certainly squares with the trial court record, but it only underscores the importance of Nisbet's testimony to the government's case-in-chief. Nisbet was the government's star witness. Rather than offering repetitive surplusage, his account was the glue that bound together the government's wide-ranging criminal conspiracy theory, and the jury would have benefitted from hearing what he had to say, in his own words.

---

[3] The court concludes that Manlove's counsel did not sufficiently object to the government's comprehensive leading examination, but I am less convinced. There can be a fine line between adequately preserving an objection and reasserting the same one so many times that the defense may appear to be unreasonably interfering with a trial's progress. Repeated objections can also compromise the jury's perception of the defense. Here, defense counsel did lodge two objections early in Nisbet's direct examination. From the available record, I find it difficult to determine whether the district court intended its ruling to be final; the majority may be right that it was not.

I recognize that this was a difficult case to try and that the government was required to compile and cogently present a large amount of evidence, but caution is warranted. It is not difficult to imagine a situation where leading of this kind could unduly influence a jury's verdict.